Charles A. Loreto, J.
The award in condemnation of the railroad having been made (48 Misc 2d 485), there remain several questions as to the rate of interest that should be applied to it.
I
One is whether the' railroad should be viewed as a “ unitary operating entity ” and, therefore, as Port Authority Trans-Hudson Corporation (PATH) contends, the New York rate of inteiest should apply even though the property is also located in New Jersey. On the other hand, the claimant argues with reason that if the railroad were to be considered a unitary entity, it should be the New Jersey rate, where the greater part of the railroad physical assets are located, and not the New York rate, which should apply. For the purpose of computing interest, it has been stipulated to allocate 65% of the physical assets to New Jersey and 35% to New York.
Although in determining the amount of the award there was reason for considering the railroad as a unitary entity, there is no valid basis for applying that concept to the determination of the interest rate. For interest on the award is the measure of additional payment justly allowed for the delay in the payment of the award. The constitutional mandate requires payment to the owner of condemned property of its value “ at the time of the taking plus an amount sufficient to produce the full equivalent of that value contemporaneously with the taking (United States v. Klamath Indians., 304 U. S; 119, 123 [1938].)
Since the award is readily apportioned between the two States in the ratio of the physical assets in each of them, the interest' *615 on one portion may differ from the other, as the laws of the two States differ as to what they consider permissible interest. The bi-Statc legislation authorizing this condemnation requires the valuation of the property to be valued according to the laws of the State in which “ the property is located or has its situs ”. (L. 1962, ch. 209, § 14; N. J. Stat. Ann., § 32:1-35.63 [L. 1962, ch. 8]). Too, it is logical to apply to the award allocable to each State the interest rate allowable in that State since the right to interest is but an extension of the underlying substantive right of recovery (Davenport v. Webb, 15 A D 2d 42 [1st Dept., 1961], affd. 11 N Y 2d 392 [1962]).
The next question is what rate of interest is allowable both in New York and in New Jersey.
II
The law in the State of New York at present, by statute and court decision, prescribes 4% as the rate of interest payable on property situated in New York. (Matter of City of New York [Maxwell], 15 A D 2d 153, 179, affd. sub nom. Matter of City of New York [Schnurmacher Corp.], 16 N Y 2d 497; Matter of City of New York [5th Ave. Coach Lines], 23 A D 2d 463, sub judice in the Court of Appeals.) However, the claimant seriously questioned as constitutionally valid. No state may interfere with or prejudice the right to just compensation, compensation mandated by the Constitution because it would not meet the standard of the ‘ ‘ full equivalent ’ ’ of the payment of the award “contemporaneously with the taking” (United States v. Klamath Indians, supra, p. 123).
Chapter 585 of the Laws of 1939 of New York provides that the rate of interest to be paid by a “ public corporation ” upon “ any judgment or accrued claim ” shall not exceed 4% annually. Indisputably, the award is an accrued claim and PATH, a public corporation. Recently in Matter of City of New York (Bronx Riv. Parkway) (284 N. Y. 48, 54, affd. 313 U. S. 540) the court overruled a similar contention as claimant’s, stating: “In the absence of evidence as to what such additional sum should be, interest, as provided by law, meets the constitutional requirement In order to overcome this objection, the claimant has submitted evidence on this point to which PATH objected as irrelevant.
Although the New York statute has treated public corporations as “favored debtors”, surely they may not be unduly favored so as to deprive the owner of his constitutional right to just compensation. For the years 1962 through 1965, the *616 proof offered fails to show that PATH would be unduly favored in New Y.ork by reason of the 4% prescribed interest. For the year 1966, however, there'-appears a sharp rise in interest rate on the varied types of certificates, notes and bonds. This has signs of continuing into the unpredictable future. And surely payment of the award, because of appeals that will be taken, may not be made for some appreciable time.
Although in this proceeding for the years 1962 through 1965 the maximum rate of 4% fixed by statute represents “ a median which cannot seriously be questioned as substantially just ” (Matter of City of New York [Maxwell], 15 A D 2d 153, 182, affd. 16 N Y 2d 497), on the uncontradicted proof that rate for the year 1966, would appear to unduly favor PATH.
The judgment of the New York Legislature of 1939 read in the statute cannot forever remain immutable. After the lapse of many years and firm proof, showing a marked and continuing rise in interest rate throughout the country, it is and can be seriously questioned as constitutionally valid. No State may interfere with or prejudice the right to just compensation, including the right to additional compensation for any delay in making payment (Matter of City of New York [Schnurmacher], 16 N Y 2d 497 [1965]).
Of the. several years involved here, the proof is satisfactory only as to the year 1966 in establishing the statutorily prescribed 4% interest to be unjust. This is not enough to warrant a departure from the interest rate currently approved by the latest decisions of the New York appellate courts. What can or may be done in the matter if several years more elapse before payment and the general market rate of interest continues at its present or even higher levels, the court need not venture to say. In any event, a reconsideration of the statute by the Legislature may well be in order.
Ill
For the New Jersey portion of the award, claimant asks 6% interest and PATH contends that it should be 4%. Unlike New York, the allowance of interest is not prescribed by statute in New Jersey. It is not based on any equitable principles but is deemed to be part of the just compensation.
Thus, in State Highway Comr. v. Seaway, Inc. (46 N. J. 376, decided Feb. 21,1966), although the court noted in the beginning of its opinion that “ The rate of interest is not an issue on this appeal ”, and declared that the State is constitutionally required to make an award of interest because of the delay in making *617 payment, it pertinently added: “ This requirement is not based on any equitable principles, nor upon a theory that the owner must be reimbursed for the income he might have obtained had he remained in possession of his property. Bather, the Constitution demands that the condemnee receive interest as a part of his right to just compensation ”.
However, regarding the amount or rate of interest, the New Jersey courts declare this is assessable upon a consideration of general equitable principles (New Jersey Highway Auth. v. Ellis, 24 N. J. 1, 7 [1957]); Acquackanonk Water Co. v. Weidman Silk Dyeing Co., 99 N. J. L. 175, 178 [Court of Errors and Appeals, 1923]).
Therefore, PATH argues, since the railroad was not a profitable operation prior to the taking, this fact should be treated as an equitable consideration favoring a 4% rate of interest. This argument stems from a viewing of interest as compensation for deprivation of the use of the property and its deficit operation as an important factor to consider in determining the interest rate. This is an erroneous conclusion based on a false premise; for interest is viewed by the Supreme Court as compensation for the delay in making payment for the property taken and not compensation for deprivation of property. This view is contrary to the significance that should be given to the portion of the quoted passage in State Highway Comr. v. Seaway, Inc. (supra) to the effect: “This requirement [i.e., of interest] is not based * * * upon a theory that the owner must be reimbursed for the income he might have obtained had he remained in possession ’ ’.
Also, in City of East Orange v. Board of Chosen Freeholders, Essex County (89 N. J. Super. 493, 501 [1965]) where, the plaintiff having conceded that equitable considerations did not warrant 6% interest, the court explained its allowance of interest at 4%, as follows: “ From August 1, 1962, even though the premises were not income-producing, the assets of plaintiff were reduced in an amount equal to the value thereof. Further, plaintiff was deprived of an opportunity to invest the monetary equivalent of the land ” (italics supplied).
The fact that the railroad as a going operation failed to show a profit has no relevancy in determining the interest rate. It is a fact that has properly been considered in determining the award. If this factor were to be taken into account again in the consideration of the allowable interest rate, it would be somewhat comparable to inflicting in the one proceeding double punishment upon the condemnee.
*618 The legal rate of interest in New Jersey is 6% as “ a matter of usage, not of statute ” (Cohrs v. Igoe Bros. [71 N. J. Super. 435, 448, 1962]). In highway condemnations the New Jersey Legislature has prescribed its 6% legal rate of interest to be paid on the excess of the award above the amount deposited in taking possession (N. J. Stat. Ann., § 27:12B-7). In this instance, therefore, the New Jersey Legislature has recognized the legal rate of 6% interest to be appropriate irrespective of the unprofitability or nature of use of any property taken. It was not concerned with balancing lack of profit or losses suffered with benefits that might accrue to the condemnee by the allowance to him of the legal rate of interest.
In Kieselbach v. Commissioner (317 U. S. 399, 403) where the court decided to treat interest on an award in condemnation as income for Federal income tax purposes, it stated: “ This additional payment was necessary to.give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the. value of payments to meet the constitutional requirement of just compensation is immaterial.”
The award represents the monetary equivalent of the property taken. When paid, it is the substitute for the property. Payment, on general equitable principles, is due on taking possession by the condemnor. It is then when the owner should receive the equivalent of his taken property. Just compensation must be made as of the time the owner is deprived of his property (United States v. Rogers, 255 U. S. 163). As this is not practical, the additional allowance because of the delay in payment is awarded to effectuate the constitutional requirement of just compensation.
In New Jersey Highway Auth. v. Ellis (24 N. J. 1, 8, supra) regarding the deposit made in court pursuant to statute on taking possession, the court stated: “ The payment into court amounts to a constructive payment to the owner and is given the same legal effect by the statute as actual payment. The money in such cases represents the land taken — it is the thing which the statute substitutes for the land.”
And speaking of the owner’s right to invest for his own benefit the deposited payment if withdrawn by him, the court added (p. 9): “But the owner has the option of either leaving the estimated compensation on deposit with the court where it is earning interest, or withdrawing it. If he withdrew it, for example, before interest might be paid under the rules, it could not be argued that any profit or capital gain he might make in *619 the interim on the reinvestment of these funds could be used to abate either the payment of the principal or interest on the excess'of the award over the deposit.”
Similarly, if the deposit actually represented the full award finally decreed, the condemnee would have had the benefit of its use for investment. This would represent all that he was entitled to receive from the date possession was taken and he would have no obligation to refund to the condemnor any profits accruing in the interval prior to final decree in excess of any interest computed thereon whether it were 4, 5 or 6%.
What valid equitable reasons are there that might militate against the allowance of the legal rate of interest? The only reason advanced by PATH is that the railroad had not been operating profitably prior to the taking. But this is not a valid one. From the claimant’s standpoint, it had forever lost its property and then what it was deprived of was the use of the monetary equivalent of the property taken. The right to additional compensation — called interest — is granted to the condemnee so that he might be put in position comparable to that in which he would have been, had he been paid' the award contemporaneously with the taking.
Absent any statute or valid equitable reason, the legal rate of interest established in New Jersey should be approved, as it was of another State by the Supreme Court in Seaboard Air Line Ry. v. United States (261 U. S. 299, 306) where the court stated: The legal rate of interest, as established by the South Carolina statute was applied in this case. This was a palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely, of making just compensation ’ ’ for the land as it stands, at the time of taking. ’ United States v. Sargent (C. C. A., Eighth Circuit), 162 Fed. 81, 84.”
Therefore, for that portion of the railroad award under the stipulation allocable to the State of New Jersey, the interest rate of 6% is granted.
IV
Claimant seeks payment as to the buildings award of 6% interest on $9,066,600 thereof, which represents the unpaid portion of 60% of their assessment from November 1, 1962 to December 26, 1963, because PATH, the condemnor, failed to make this advance payment mandated by statute.
Subdivision (x) of section 1 of chapter 819 of the Laws of 1947 provides in part: 44 Where the port authority. has taken possession of the real property to be acquired prior to the entry
*620 of the final decree, the port authority shall, on request, pay to the parties entitled thereto a sum equal to sixty per centum of the assessed value of the real property taken * * * within sixty days after taking possession thereof (Italics supplied.)
PATH took possession of the property on September 1, 1962, and written demand for payment on or before November 1, 1962 had been made. Its excuse for its failure to have made the payment as required by the statute is that there was pending and still undecided the litigation over the constitutionality of the taking, Avhich was finally decided by the Supreme Court on December 16, 1963 (375 U. S. 960; 375 U. S. 78; 12 N Y 2d 379).
■But as Mr. Justice Gold earlier said in a proceeding pertaining to this subject, “ It was under no obligation to apply to be placed in possession of the properties sought to be condemned until after the validity of the» legislation had finally been adjudicated. Had it awaited such an adjudication before applying for possession, it Avould not have subjected itself, to the liability for an advance payment imposed by subdivision (x) of section 1.” (Matter of Port Auth. Trans-Hudson Corp., 38 Misc 2d 412, 415.)
PATH cannot seriously urge that it could not safely have made the advance payment because of the possibility that the taking might ultimately be held to be illegal, and that if it had made payment, it might find difficulty in having it refunded. This risk, if any, could have been overcome by adequate assurances for refunding the payment with adjustments for use of the property, if the condemnation were vitiated.
An objection Avas raised by PATH before Mr. Justice Gold to the effect that the statute requires the issuance of a certificate by its general counsel showing the person legally entitled to receive payment and this he could not issue because of alleged open questions affecting title to the realty. As to this objection, his opinion states (p. 419): “ The court is unable, on the inadequate record now before it, to hold that these various possible defects of title are wholly lacking in merit and that general counsel’s failure to furnish the required certificate is wholly Avithout basis.” The application for a direction of payment was accordingly denied without prejudice to a renewal after the issuance of the certificate of general counsel or a shoAving that there Avas no merit to the alleged defects of title.
At no time during the lengthy condemnation trial, has there been any proof of defect in titles. The withholding of the certificate of general counsel was arbitrary and without substantial *621 basis, and therefore the requirement for its issuance should be treated as a dilatory tactic.
Claimant points to the financial burden it unjustly suffered in that it was required to pay interest on its bonds at 6% during that time, which it could have met with the mandated prepayment if it had not been inexcusably withheld. It therefore seeks that rate in damages. This is a factor under the facts presented, of which equity would take cognizance.
The question raised, therefore, is whether the rate of interest sought as damages may be decided on purely equitable principles in the context of this proceeding. It seems to the court that it may not. The court is now concerned with the final award and decree.
The mandate for the prepayment is found in the statute. If the Legislature intended to create thereby also a remedy for the owner, it went but half way, as the statute fails to specify the relief he may have if unreasonably denied the right. The court may not here look beyond the statute to find or create a remedy in this instance because of what may be considered inadequate legislation, which seems to confer a meaningless or hollow right to the owner, the possession of whose property has been taken.
At this stage of the proceeding after the final award, the award attributable to property in New York State will bear a single or uniform rate of interest.
The prepayment not made, now included in and part of the full award, may not be treated differently from the remainder of the award in view of the statute. If 6% were allowed on the amount of prepayment during the time it had been withheld, under the same subdivision of the act, the prepayment with the interest paid would have to be deducted from the total award with whatever interest thereon is allowed. For the concluding sentence of subdivision (x) of section 1 reads: ‘ When any such advance payment shall have been made, the port authority, on paying the awards for the real property acquired, shall deduct from the total amount allowed as compensation the sum advanced plus interest from the date of the payment of such advance to the date of the final decree, and the balance shall be paid as hereinbefore provided in subdivision (w) hereof.” Therefore, it may be said that this statute does not contemplate a higher rate of interest on the withheld prepayment than is granted on the final award.
One may wonder whether the first-quoted provision of the act mandating a prepayment becomes pointless, when it is not *622 made as required. Perhaps the only relief for such default would have had to be found before the final decree in equity, by first obtaining, if possible, a court direction for its payment and then, if not paid pursuant to such court order, by seeking a contempt order imposing a fine to cover the damages suffered in withholding the mandated prepayment.