Arnold Gt. Fraiman, J.
This is a motion by third-party defendant Westinghouse Electric Corp. for summary judgment dismissing the third-party complaint. In the primary action, plaintiff Architectural Aluminum Corporation alleges that it contracted with defendant, Macarr, Inc. for the installation of a rectifier to be in working order on January 2, 1969. The complaint alleges that the unit was not in working order until July 2, 1969, and that the delay caused plaintiff to suffer damages in the amount of $70,000. In its third-party complaint, Macarr claims that Westinghouse is liable for any judgment' entered against Macarr because Westinghouse supplied certain diodes and diode protecting fuses, known as semiconductors, to Macarr for use in the rectifier; that Westinghouse warranted them for fitness, and the failure of the semiconductors to function properly caused the delay in the rectifier’s installation.
Westinghouse, without conceding the fact,, for the purpose of this motion does not contest Macarr’s claim that the semiconductors were defective. Instead, it contends that it is not liable for any judgment entered against Macarr, because its warranty agreement with Macarr covering the sale of the semiconductors in question expressly excluded any warranty for merchantability or fitness. It alleges that its warranty was limited to repairing or replacing any defective products, and inasmuch as the purchase price for the semiconductors was refunded to Macarr, Westinghouse argues that it has thereby been discharged of any liability.
In response to written interrogatories submitted to it by Westinghouse, Macarr stated that it was relying upon a written warranty contained in a catalogue furnished it by Westinghouse and an implied warranty of fitness of the semiconductors for the particular purpose for which they were to be used. The catalogue warranty upon which Macarr relied reads in relevant par.t as follows: “ Westinghouse * * * will correct any defects in workmanship, by repair or replacement f.o.b. factory, *497 for any * * * semiconductor * * * The foregoing warranty is exclusive and in lieu of all other warranties of quality, whether written, oral, or implied (including any warranty of merchantability or fitness for purpose). Westinghouse shall not be liable for any consequential damages(Italics added).
Westinghouse had supplied Macarr with semiconductors and other electrical equipment for a number of years prior to the sale in question, pursuant to annual letter agreements running from April to April of each year. It is alleged by Westinghouse that the .semiconductors in question were purchased under the
1968 letter agreement in effect from April, 1968, to April, 1969, and also pursuant to a letter from Westinghouse to Macarr dated December 18, 1968, containing a price quotation for .the specific conductors requested by Macarr. Although Westinghouse has been unable to produce a copy of the 1968 letter agreement or the original of the December 18 letter which is presumably in the possession of Macarr, its sales manager for semiconductors stated that both were written on Westinghouse’s so-called quotation stationery, which was identical to the stationery used for its 1969 letter agreement with Macarr. These allegations are not denied by Macarr, an opposing affidavit by its former purchasing officer merely stating that he does not recall whether any agreement covered 1968-69. A copy of the
1969 letter agreement attached to the moving papers indicates that it consists of a one-page letter on Westinghouse’s printed stationery. The typed portion of the letter sets forth general terms for the purchase by Macarr of semiconductors from Westinghouse. At the bottom of the sheet there appear the following printed words: “ Subject to the Terms and Conditions on the Back of this Quotation ”. The reverse side of the sheet is filled with printed matter which, for want of a better .term, may be described as boilerplate for a typical sales contract. The printing is uniform throughout, with a single exception: under the heading “ Warranty ”, there is .set forth a guarantee that the items sold would be free of defects, similar to that contained in the catalogue quoted above. There then appears the following in boldfaced type: “ This Warranty or any other warranty stated or referred to on the face hereof, is exclusive and is in lieu of any warranty of merchantability, fitness for purpose, or other warranty of quality, whether express or implied.”
The semiconductors were delivered to Macarr in January, 1969. In May, 1969 additional semiconductors of a different type were ordered to replace those shipped in January, which had apparently failed. On June 30, 1969 all of the semieon *498 ductors were returned and Maearr was credited with their purchase price.
In opposition to Westinghouse’s motion, Maearr has submitted an affidavit by the individual who was in charge of Maearr’s purchases from Westinghouse between 1968 and 1970. He alleges that-at no time was the printed matter on the back of Westinghouse’s quotation letters or the material relating to warranties in the Westinghouse catalogue ever “especially” called to his attention by anyone at Westinghouse. Further, Maearr alleges that Westinghouse’s disclaimer of any implied warranty of merchantability and fitness was not ‘ ‘ conspicuous ’ ’ as required by the Uniform Commercial Code, and finally, that it was unconscionable, and therefore unenforceable.
The court finds that none of these contentions raise a material issue of fact which would require a denial of the motion.
Maearr’s answers to the interrogatories submitted to it preclude it from claiming that it was unaware of the limitations imposed on Westinghouse’s warranty. In response to a query as to what warranty it was relying upon in its complaint, it specifically stated that it was relying upon the written warranty set forth in Westinghouse’s catalogue, as well as an implied warranty of fitness. Maearr cannot claim to have relied upon a specific warranty which contained an express disclaimer as to merchantability and fitness and at the same time deny that it was aware of its existence. Thus, whether its former purchasing officer had the warranties ‘ ‘ especially ” called to his attention or not is completely immaterial. Moreover, even in the absence of the responses to the written interrogatories, there is no requirement in the Uniform Commercial Code that Maearr have had actual knowledge of Westinghouse’s disclaimer of warranties of merchantability and fitness in order to make them effective, so long as the disclaimer was in writing and conspicuous. (1 Anderson, Uniform Commercial Code [2d ed., 1970], § 2-316:23.)
Turning to the issue of conspicuousness, subdivision (2) of section 2-316 of the Uniform Commercial Code provides in relevant part: “to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that ‘ There are no warranties which extend beyond the description on the face hereof,’ ”
*499 Subdivision (10) of 'section 1.201 defines “conspicuous” as follows: “ A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NonNegotiable Bill oe Lading) is conspicuous. Language in the body of a form is ‘ conspicuous ’ if it is in larger or other contrasting type or color. But in a telegram any stated term is ‘ conspicuous ’. Whether a term or clause is ‘ conspicuous ’ or not is for decision by the court.”
The catalogue warranty, a copy of which is annexed as Exhibit C to the affidavit of Robert Hirche in support of the motion, is separately set forth from the other matter contained therein, is framed with a heavy black line, and is surrounded on all four sides by an approximately one-inch blank margin. As noted above, after warranting that Westinghouse will correct any defects by repair or replacement, it states that the foregoing ‘ ‘ is exclusive and in lieu of all other warranties of quality, whether written, oral or implied ”. The quotation letters contain similar language in bold-faced type. The court finds that these disclaimers meet the standard of conspicuousness provided for in the code.
The final issue raised by Macarr is that the provisions under which Westinghouse seeks to avoid responsibility were unconscionable under the Uniform Commercial Code. Subdivision (3) of section 2-719 provides that “ Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.” Like the issue of conspicuousness, the issue of conscionability is a matter to be decided by the court and the existence of this issue is no bar to summary judgment. (Wilson Trading Corp. v. Ferguson, Ltd., 23 N Y 2d 398.) Subdivision (2) of section 2.302 of the code provides that “When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.” In interpreting this provision the court in the Wilson case (supra) expressly left undecided whether a hearing was mandatory or discretionary, where the court accepts the possibility of unconscionability. However, that question need not be determined here, inasmuch as I find that the affidavits and exhibits submitted, insofar as they are relevant to this ques *500 tion, raise no factual issues which need be resolved. The following facts in the affidavits ¡submitted in support of the motion by Westinghouse are uncontroverted: Macarr had been purchasing semiconductors from Westinghouse for a number of years prior to the purchases in question. The limitation on Westinghouse’s warranties was constant throughout this period. Although the court has found they were conspicuous, Macarr never requested any modifications in their terms. The practice of excluding implied warranties and limiting liability to the purchase price and excluding consequential damages is common in the semiconductor industry. Finally, the warranties of General Electric and other semiconductor manufacturers from whom Macarr has been purchasing semiconductors since 1962 are substantially the same as Westinghouse’s. On the basis of the foregoing uncontradicted allegations, the court accepts no possibility of unconscionability, and the necessity for a hearing is thereby obviated.
Having established that the semiconductors sold to Macarr were not warranted for merchantability and fitness, the third-party defendant is entitled to a dismissal of the third-party complaint.