EARL M. JORGENSEN CO., Plaintiff and Counterclaim Defendant-Appellee *v.* MARK CONSTRUCTION, INC., Defendant and Counterclaimant-Appellant

NO. 5543

SEPTEMBER 30, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE FONG ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY MENOR, J.

This case arises out of a contract for the sale of some 3,468 lineal feet of sectional steel plate. The seller-appellee, Earl M. Jorgensen Co., sued the purchaser-appellant, Mark Construction, Inc., for the unpaid balance of the purchase price. Mark counterclaimed for damages allegedly resulting from Jorgensen's failure to supply material conforming to specifications. Jorgensen moved for summary judgment on the counterclaim, contending that its liabilities were limited under the contract. The trial court granted the motion, but allowed Mark to file this interlocutory appeal.

The point in dispute concerns the terms and provisions constituting the contract between the parties. More specifically, at issue is whether the limitation of liability clause asserted by Jorgensen was part of the contract, and if so, (1) whether the limitation of liability clause was unconscionable, and (2) whether Mark's remedy as provided in the contract had failed of its essential purpose.

I

In order to prepare a bid for a State project involving a two-mile segment of the H-2 Freeway, Mark contacted Hawaii Pipe and Jorgensen, to obtain quotations for the sectional plate it would require in the event its bid was accepted. Both companies responded with written quotations. Jorgensen's quotation for the materials, dated June 8, 1970,

was the lower of the two by approximately $25,000. Mark submitted its bid to the State on June 12, 1970. On July 10, 1970, Jorgensen sent Mark a second written quotation, on the same form as the first and identical thereto, except that the total purchase price of the material was reduced by approximately $5,000. Mark was awarded the State contract on July 12, 1970. At the request of Jorgensen, Mark issued its purchase order, based on the second quotation, on July 15, 1970. The quotations were signed by Mike Durant for Jorgensen, and the purchase order by Modesto Gaborno for Mark.

We must determine at the outset whether either of the Jorgensen quotations constituted an offer which was accepted by Mark when it issued its purchase order, or whether the purchase order was the offer which was accepted by Jorgensen when it began to act in reliance upon the purchase order.

Whether a quotation constitutes an offer or merely an invitation to make an offer necessarily depends upon the terms of the quotation and the facts and circumstances surrounding its issuance. *Nickel v. Theresa Farmers Coop. Ass'n.*, 247 Wis. 412, 20 N.W.2d 117 (1945); *Robert Gordon, Inc. v. Ingersoll-Rand Co.*, 117 F.2d 654 (7th Cir. 1941).

We are satisfied, from the undisputed evidence, that the second quotation of July 10, 1970, was an offer which was accepted by Mark when it issued its purchase order on July 15, 1970. The quotation set forth all the terms necessary to constitute a binding contract upon acceptance. The course of dealing between the parties evidenced an intention to treat the second quotation as an offer. After receiving the original quotations from Hawaii Pipe and Jorgensen, Mark decided to reject Hawaii Pipe's and opted instead for the Jorgensen proposal. In preparing its bid for the State project, it used the first Jorgensen quotation as a basis for calculating its own bid proposal to the State. Mark submitted its bid to the State on June 12, 1970. On July 10, 1970, Jorgensen sent Mark the second written quotation, identical to the first, except that the total purchase price of the material had been reduced. Mark was awarded the State contract on July 12, 1970. A few days later, Mr. Durant called Mr. Gaborno, who had been

acting for Mark in the negotiations, and asked for a purchase order because Jorgensen was anticipating a price increase in steel and wanted the order to protect itself from the rise in price. If anything, this act on the part of Jorgensen, through Durant, was a reaffirmation of its offer to sell the material to Mark in accordance with its second quotation. After consulting with Mark's president, Mr. Gaborno issued the purchase order on July 15, 1970. Mark, by then, had made its own contractual commitments to the State. It had already obligated itself to perform certain construction work within deadlines established in its contract. It had bid on the project on the basis of the price quotations from Jorgensen, and it needed the materials which had to be delivered at the times and places specified. The terms of the quotation were specially designed to enable Mark to meet the State's contractual specifications, and the purchase order had the effect of assuring Mark the material with which to fulfill its contractual obligations. The purchase order described the plates to be furnished, the purchase price, the terms of payment, and the time and place of delivery, essentially as contained in the quotation of July 10, 1970.

The limitation of liability provision was an essential part of Jorgensen's offer. The quotation of June 8, 1970, contained the disputed provision. So also did the quotation of July 10, 1970. Both quotations were on single sheet printed forms entitled "QUOTATION." The front side of each form contained a description of the quantity and type of sectional plate to be furnished, the price, the terms of payment, and the place of delivery. Both were signed by Mike Durant for Jorgensen. At the bottom of the front page appeared the following which were printed in block capital letters:

NOTICE — PROVISIONS PRINTED ON THE RE-VERSE SIDE HEREOF COMPRISE ADDITIONAL TERMS OF THIS CONTRACT LIMITING THE SELLER'S WARRANTY OBLIGATION AND EX-CLUDING LIABILITY FOR CONSEQUENTIAL DAMAGES.

On the reverse side, among other provisions, was the following:

LIMITATION OF WARRANTY LIABILITY

Seller hereby warrants that the material described herein conforms to specifications. Seller's liability is expressly limited to replacement of defective material or refund of purchase price to the original purchaser, at Seller's option, when material is properly worked or used within a reasonable time. In no event shall Seller be liable for any labor claims or special, indirect, consequential or other damages, whether arising under any warranty, express or implied, or otherwise, and the remedies of Buyer expressed herein are exclusive. Anything contained in prior or subsequent communications between Buyer and Seller which purports to alter this provision shall be void and is superseded by this provision. This warranty is made in lieu of all other express and implied warranties, including any implied warranty of merchantability or fitness for a particular purpose, and of any other obligations or liability on the part of Seller. Seller neither assumes nor authorizes any person to assume for it any liability not expressed herein.

Mark's purchase order made no reference whatsoever to this limitation of warranty liability provision, nor to any of the other printed provisions.

There must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract. *Carson v. Saito*, 53 Haw. 178, 489 P.2d 636 (1971); *Honolulu Rapid Transit Company, Limited v. Paschoal*, 51 Haw. 19, 449 P.2d 123 (1968). The Uniform Commercial Code is in accord. Under HRS § 490:1-201(11) and 1-201 (3), a contract is reached from the bargain of the parties in fact as found in their language or by implication from their conduct and the surrounding relevant circumstances.

The existence of mutual assent or intent to accept is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention. Unexpressed in-

tentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties. *Wesco Realty, Inc., v. Drewry,* 9 Wash. App. 734, 515 P.2d 513 (1973), *Plumbing Shop, Inc. v. Pitts,* 67 Wash. 2d 514, 408 P.2d 382 (1965).

We deem it sufficiently clear from the undisputed facts that the submission of the purchase order by Mark was a manifestation of its intent to accept Jorgensen's offer in all of its essential terms. Mr. Gaborno was vice-president and engineer in charge of estimating, preparing bids, and purchasing materials for Mark at the time of these transactions. The H-2 project was only one of the several construction projects Mark was engaged in at the time. There is no question about his authority to act for Mark in its transactions with Jorgensen. Mr. Gaborno used the first written quotation as a basis for preparing Mark's bid to the State. He used the second written quotation as a basis for preparing Mark's purchase order to Jorgensen. There is no assertion on his part that he was unaware of the limitation of liability and of warranty provision. There is no claim that he was misled. The disputed provision was not in small print; nor was it inconspicuous. *See* HRS § 490:2-316. *Compare, Windsor Mills, Inc. v. Collins & Aikman Corporation,* 25 Cal. App. 3d 987, 101 Cal. Rptr. 347 (1972).

Before the advent of the Uniform Commercial Code, courts applied the "mirror-image" rule almost exclusively. Under this rule, a purported acceptance of an offer which attempted to modify one or more terms of the offer was a rejection of the offer and resulted in a counteroffer. *United States v. Marietta Manufacturing Company,* 339 F. Supp. 18 (D. W.Va. 1972). The Uniform Commercial Code was intended to modify this strict principle in contracts for the sale of goods. *See Air Products and Chemicals, Inc. v. Fairbanks Morse, Inc.,* 58 Wis. 2d 193, 206 N.W.2d 414 (1973). Under the Code, a definite and seasonable expression of acceptance or a written confirmation is an acceptance, and is a counteroffer only as to additional or different terms. HRS § 490:2-207.

The submission of the purchase order by Mark was an acceptance of all of the terms of the offer, and was not an

acceptance as to a part and a counteroffer as to the limitation of liability clause. Mark did not submit any additional terms with its purchase order. The plain language of HRS § 490:2-207(1) indicates that the "definite and seasonable expression of acceptance or a written confirmation" is an acceptance even though it states terms that are additional to or different from those offered. There were none so stated in the purchase order. There were no additional terms and no conflict or difference in terms such that HRS § 490:2-207(2) would apply.[1]

A contract is formed by the process of offer and acceptance. In this case, Jorgensen made a written offer to sell certain goods to Mark by the issuance of its quotation form, which conspicuously included the disputed provision. Mark accepted this offer by the issuance of a purchase order prepared with reference to and based upon the Jorgensen quotation. Mark's use of the purchase order as an acceptance to bind the seller, Jorgensen, to the terms of its offer is specifically acknowledged by the Code to be an effective acceptance. HRS § 490:2-206(a). Issuance of the purchase order objectively manifested Mark's acceptance of and assent to all terms proposed by Jorgensen. Mark's silence was not an effective rejection or a counteroffer. The limitation of warranty and liability provision was a part of the contract between the parties.

II

On the question of whether the trial court erred in failing to hold that the limitation of liability clause was unconscionable and in failing to allow an independent hearing on the issue of unconscionability, we find no error.

---

[1] Comment 1 on HRS § 490:2-207 states:

"This section is intended to deal with two typical situations. The one is where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal acknowledgments or memoranda embodying the terms so far agreed upon and adding terms not discussed. The other situation is one in which a wire or letter expressed and intended as the closing or confirmation of an agreement adds further minor suggestions or proposals such as 'ship by Tuesday,' 'rush,' 'ship draft against bill of lading inspection allowed,' or the like."

HRS § 490:2-302 provides as follows:

*Unconscionable contract or clause.* (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

The plain language of the statute does make a hearing mandatory when the issue of unconscionability is raised; however, it does not by its terms require a hearing separate from that of a motion for summary judgment. All that is required is "a reasonable opportunity to present evidence as to its commercial setting, purpose and effect." A hearing on a motion for summary judgment may provide such an opportunity, and where there are no material facts in dispute, the existence of the issue of unconscionability is no bar to the granting of summary judgment. *See Potomac Electric Power Company v. Westinghouse Electric Corporation,* 385 F. Supp. 572 (D.D.C. 1974); *Royal Indemnity Company v. Westinghouse Electric Corporation,* 385 F. Supp. 520 (D.N.Y. 1974); *Boone Valley Cooperative Processing Association v. French Oil Mill Machinery Company,* 383 F. Supp. 606 (D. Iowa 1974); *West Point-Pepperell, Inc. v. Bradshaw,* 377 F. Supp. 154 (D. Ala. 1974); *Wilson Trading Corporation v. David Ferguson, Ltd.,* 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968); *Architectural Aluminum Corporation v. Macarr, Inc.,* 70 Misc. 2d 495, 333 N.Y.S.2d 818 (1972).[2]

---

[2] These later New York cases make it clear that Central Budget Corp. v. Sanchez, 50 Misc. 2d 620, 279 N.Y.S.2d 391 (1969), cited by Mark, does not stand for the proposition that summary judgment may never be granted if the issue of unconscionability is raised.

474

H.R.S. § 490:2-719[3] permits the limitation of remedies to repair or refund, as well as the exclusion of consequential damages, provided that such exclusion is not unconscionable. Clauses similar to the one involved here have withstood attacks of unconscionability. *E.g., Potomac Electric Power Company v. Westinghouse Electric Corporation, supra; Royal Indemnity Company v. Westinghouse Electric Corporation, supra; Boone Valley Cooperative Processing Association v. French Oil Mill Machinery Company, supra.*

Comment 1 to HRS § 490:2-302 states the test applicable in determining unconscionability:

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . The principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power.

It is evident from the undisputed facts that this contract was not made under circumstances involving oppression and unfair surprise. There was no great disparity between the bargaining power of the two parties. At the time of the making of the contract, Mark was conducting a multi-million dollar business, and was engaged in a number of large construction projects. Moreover, Mark was aware that at least one other

---

[3] §490:2-719 *Contractual modification or limitation of remedy.* (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) The agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

company besides Jorgensen was capable of supplying it with the required sectional plates, and was not precluded from dealing with that other. Nor can Mark claim unfair surprise over the inclusion of the limitation of liability clause in the contract. Mark had the terms of Jorgensen's quotation before it at the time of the preparation of the purchase order. In sum, there simply is no evidence showing that Mark was an unwilling purchaser overreached and forced to yield to onerous terms imposed by Jorgensen. The trial court did not err in determining that the limitation of liability clause under consideration was not unconscionable.

III

Of more significant import is Mark's contention that the limited remedy provided in the contract had failed of its essential purpose. HRS § 490:2-719(2). It contends that the steel plates delivered to the job site by Jorgensen did not conform to contractual specifications in major respects, and that the defect in the material could not be detected until construction had actually commenced. It charges Jorgensen with having failed to render adequate assistance when requested, and points out that defective plates sent back to Jorgensen for corrective repairs were returned to Mark uncorrected. Mark urges that considering the number and nature of the defects encountered, the time constraints imposed upon it by its contract with the State, the number of men and machinery tied up for each day of delay caused by the defective material supplied by Jorgensen, and the failure of Jorgensen to perform its part of the bargain, the limited remedy provided in the contract had failed of its essential purpose and that, therefore, the limitation of liability clause should be declared void and of no effect.

Initially, we must dispose of Jorgensen's argument that this court should not consider this issue since it was not raised in the trial court.

A judgment ordinarily will not be reversed upon a legal theory not raised by the appellant in the court below. This is the general rule to which an appellate court will adhere,

unless and until justice otherwise requires. *In re Taxes, Hawaiian Land Company, Limited,* 53 Haw. 45, 487 P.2d 1070 (1971). *See also Akamine & Sons, Ltd. v. Hawaii National Bank,* 54 Haw. 107, 503 P.2d 424 (1972). In determining whether to exercise discretion to hear new issues, three factors to be taken into account are "whether consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public import." *Fujioka v. Kam,* 55 Haw. 7, 9, 514 P.2d 568, 570 (1973). We have before us an appeal from a summary judgment. On a motion for summary judgment, the trial court does not try factual issues; rather, it determines whether there are any such issues to be tried. *Soria v. Oxnard School District Board of Trustees,* 488 F.2d 579 (9th Cir. 1973), *cert. denied,* 416 U.S. 951 (1974); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2712 (1973). The consideration of this issue raised for the first time on appeal will not affect the integrity of any findings of fact of the trial court. No additional facts are necessary to a determination by this court of this issue. The matter is one of first impression in this jurisdiction, and calls for the interpretation and elucidation of HRS § 490:2-719(2). The question was adequately briefed and argued before this court. Moreover, while made in the context of its unconscionability argument, Mark did lay the basis for its consideration when it stated in its opposition memorandum to Jorgensen's motion for summary judgment:

> The nature and extent of the defects in the material delivered Defendant by Plaintiff is so expansive as to virtually encompass the whole of the 384 pages of testimony given by Mark Watase, Defendant's President, and the 297 pages of testimony given by Modesto Gaborno, Defendant's Vice-President, in their respective depositions. It is Defendant's contention that the defects in and of themselves were so pervasive as to render the subject limitation of liability clause unconscionable in its application to the subject transaction.

We will, therefore, consider this issue.

The Uniform Commercial Code provides that "[w]here

circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." HRS § 490:2-719(2). Comment 1 to HRS § 490:2-719 explains the principle behind this provision:

> [I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

Limited remedies under the Code have been held to fail of their essential purpose in two basic situations.

One of these involves defects in the goods which are latent and not discoverable upon receipt of shipment and reasonable inspection. In *Neville Chemical Company v. Union Carbide Corporation*, 294 F. Supp. 649 (D.Pa. 1968), *vacated on other grounds*, 422 F.2d 1205 (3d Cir. 1970), it was held that a clause limiting damages to the purchase price of the goods (resin oil) failed of its essential purpose where the defect in the goods (contamination) was not discoverable until after the goods had been processed. *See also Wilson Trading Corporation v. David Ferguson, Ltd.*, supra.

A limitation of remedies clause fails, in the other instance, when the seller or other party required to provide the remedy, by its action or inaction, causes the remedy to fail.

In *Adams v. J.I. Case Company*, 125 Ill. App.2d 388, 261 N.E.2d 1 (1970), the court held that a clause which limited the plaintiff buyer's remedies to repair and replacement of defective parts of a tractor and negated liability for consequential damages did not bar the plaintiff's action for direct and

consequential damages, where the plaintiff had alleged that the damages resulted from the failure of defendant manufacturer and seller to provide the limited remedy in a reasonably prompt and non-negligent manner. The court ruled that although the limitation of remedies and of liability may not have been unreasonable at the time of purchase, where the defendant's subsequent conduct caused the limited remedy to fail of its essential purpose it would not be permitted to assert its right to limited liability.

In *Jones & McKnight Corp. v. Birdsboro Corporation*, 320 F. Supp. 39 (D. Ill. 1970) the court, applying Pennsylvania law, denied partial summary judgment to a defendant who had claimed that a contract clause which limited the plaintiff's remedies to repair and replacement and excluded recovery for consequential damages barred the plaintiff's claim for consequential damages as a matter of law. The plaintiff had alleged that the defendant had been wilfully dilatory in replacing and repairing the machinery involved. In denying the defendant's motion, the court reasoned as follows:

> [Plaintiff] was entitled to assume that defendants would not be unreasonably or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for the relief which the defendant is attempting to avoid. If the plaintiff is capable of sustaining its burden of proof as to the allegation it has made, the defendant will be deemed to have repudiated the warranty agreement so far as restricting the plaintiff's remedies, and the exclusive remedy provision of the contract will be deemed under the circumstances to have failed of its essential purpose, thus allowing the plaintiff the gen-

eral array of remedies under the Code. 320 F. Supp. at 43-44.

The court in *Koehring Co. v. A.P.I. Incorporated,* 369 F. Supp. 882 (D. Mich. 1974) applied a similar rationale when it denied the plaintiff seller's motion to dismiss the defendant buyer's counterclaim for consequential damages.

In *Beal v. General Motors Corporation,* 354 F. Supp. 423 (D. Del. 1973), the defendant moved to strike certain allegations in plaintiff's complaint as immaterial, arguing that plaintiff was limited by contract to the remedies of repair and replacement and could not recover consequential damages resulting from the defendant's alleged inability or unwillingness to provide the limited remedies. The court denied the defendant's motion, stating:

> The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an express warranty, is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. When the warrantor fails to correct the defect as promised within a reasonable time he is liable for a breach of that warranty. (Citations omitted) The limited, exclusive remedy fails of its purpose and is thus avoided under Sec. 2-719(2), whenever the warrantor fails to correct the defect within a reasonable period. 354 F. Supp. at 426.

In *Ehlers v. Chrysler Motor Corporation,* 226 N.W.2d 157 (Sup. Ct. S.D. 1975), the court allowed the plaintiff buyer to recover consequential damages despite a contractual limitation of remedy to replacement or repair of defective automobile parts. Looking to the comments to U.C.C. § 2-719(2) for guidance, the court held:

> By delaying for an unreasonable length of time the repair of respondent's [plaintiff's] vehicle, appellant deprived him of the "substantial value of the bargain." Stated otherwise, the warranty was breached causing the avail-

able remedy "to fail of its essential purpose." Such failure brings into play all otherwise available remedial devices, to wit: SDCL 57-8-39 (UCC § 2-715(1)), Incidental damages from seller's breach; and 57-8-40 (UCC § 2-715(2)), Consequential damages from seller's breach. 226 N.W.2d at 161.

*Accord: Riley v. Ford Motor Company,* 442 F.2d 670 (5th Cir. 1971).

Jorgensen here had warranted that the material it supplied to Mark would conform to specifications. Whether it breached this warranty is an issue in dispute. Assuming a breach, Jorgensen had nevertheless limited its liability under the contract to replacement of defective material or to refund of the purchase price. Mark alleges that the defects in the material supplied were not detectable until attempts to put the plates in place were made. Under these and the totality of the circumstances, a refund of the purchase price would have been a totally inadequate remedy. *Neville Chemical Company v. Union Carbide Corporation, supra.* Moreover, when the alleged defective condition of the material was called to Jorgensen's attention, it chose to attempt corrective repairs. There is a dispute as to whether the remedy provided by Jorgensen in this respect was effective. No replacement of allegedly defective material was undertaken by Jorgensen.

Whether Jorgensen breached its materials warranty, and if it did, whether Jorgensen, by its conduct, had caused Mark's contractually limited remedy to fail of its essential purpose, must depend upon the particular facts and circumstances of this case. The record reveals the existence of genuine issues of material fact, which, if resolved in Mark's favor, would entitle it to the array of remedies provided a buyer by the Uniform Commercial Code. *Adams v. J.I. Case Company, supra; Jones & McKnight Corp. v. Birdsboro Corporation, supra; Beal v. General Motors Corporation, supra; Ehlers v. Chrysler Motor Corporation, supra.* Accordingly, we reverse and remand for further proceedings consistent herewith.

*Frank D. Padgett, (Alan M. Goda* with him on the briefs,

*Padgett, Greeley, Marumoto & Steiner,* of counsel) for Defendant-Appellant.

*Wallace Klein, (Jared H. Jossem, Charles E. Murphy* with him on the brief, *Torkildson, Katz & Conahan,* of counsel) for Plaintiff-Appellee.