OPINION OF THE COURT
Benjamin F. Nolan, J.
Plaintiff sues to recover $2,392.90, the balance of a trade account. Defendant admits that the balance is unpaid but refuses payment on grounds that the adhesives which plaintiff sold it were not fit for the purposes sold. Additionally, defendant counterclaims for $12,500 in money damages resulting from alleged breach of contract, breach of the warranty of merchantability and misrepresentation by plaintiff that it was an expert in adhesive products and materials. Plaintiff now moves for summary judgment.
Defendant is in the building and construction business. In September of 1976, defendant had jobs which required aluminum sheets to be laminated to plywood sheets on the outside of buildings. For this purpose, defendant ordered 60 gallons of aluminum-to-plywood adhesive from plaintiff. A five-gallon can of the adhesive was delivered personally by plaintiff’s representative on September 10, 1976 and a 55-gallon drum of the adhesive was shipped to defendant on September 17, 1976. Defendant admits that it received and used the adhesive in the installation of aluminum panels. Shortly thereafter, according to defendant, "delamination occurred”, which allegedly caused defendant to sustain money damages.
Defendant’s vice-president alleges that when defendant complained to plaintiff about the alleged delamination, plaintiff declined responsibility on the grounds that it did not warrant or guarantee the adhesive product. Defendant disagrees, claiming that before it ordered the adhesive, plaintiff’s representative expressly warranted at one of the job sites that plaintiff’s chemists had formulated a special adhesive (Formula No. BN-76-1113 D) that would fulfill the specific requirements of the jobs. The said formula number appears on the invoices covering the 60 gallons of adhesive eventually delivered to and used by defendant.
Plaintiff points to its trade label which it claims (and defendant does not deny) was affixed to the outside of the five-gallon can and the 55-gallon drum containing the adhesive delivered to and used by defendant. The label contains the following statement: "non-warranty: Since we have no control over the conditions under which these goods are trans *286 ported or stored, handled or used, we make no warranty, either express or implied, with respect to these goods or their fitness for any purpose or the results to be obtained from their use. No representative of ours has authority to waive or change this provision, which applies to all sales, if the purchaser DOES NOT ACCEPT THE GOODS ON THESE TERMS, THEY ARE to be returned at once, unopened.” Plaintiff claims that the foregoing warranty disclaimer is necessary because the adhesive is subject to countless abuses; and, that defendant had two opportunities to note the disclaimer on the label, the first, upon personal delivery of the five-gallon can by the very representative of plaintiff whom it claims made an express warranty to the contrary, and the second, upon the subsequent delivery of the 55-gallon drum. Besides, argues plaintiff, defendant had a reasonable opportunity to inspect and test the adhesive contained in the five-gallon can, so that, if it was not adequate, then the 55-gallon drum should have been returned unused. Additionally, plaintiff points out that each of its invoices states in bold writing at the bottom thereof that: "We are not responsible for the end use of this material. Merchandise covered by this invoice must be returned in 10 days, if not satisfactory.” And furthermore, plaintiff contends that, "any allegation by defendant that a warranty may have been effectuated by plaintiff’s salesman is not only excluded by plaintiff’s non-warranty on its label but is clearly outside of the course of conduct of the parties and the trade practice of this industry * * * Furthermore, the parties had been doing business for years and defendant was, therefore, fully familiar with plaintiff’s policy of non-warranty as shown on its labels.”
It should be noted at this point that buyer has the burden of proving its affirmative defense that there was an express warranty, while seller has the burden of proving that an implied warranty has been disclaimed where such implied warranty is otherwise presumed to exist. (Bennett v Piscitello, 259 App Div 964, affd 285 NY 584, rearg den 285 NY 743; Turl’s Sons v Williams Eng. Co., 136 App Div 710.)
Defendant’s opposition to this motion for summary judgment is embodied in a single affidavit of its vice-president, which does not sufficiently address itself to any of plaintiff’s contentions, and provides no evidentiary supports for its own contentions. Very recently, the Appellate Division, First Department, re-emphasized in Stainless Inc. v Employers Fire Ins. Co. (69 AD2d 27, 32) that: "The law is well settled that a *287 party opposing a motion for summary judgment must assemble and lay bare affirmative proof to demonstrate the existence of a genuine triable issue of fact (Shaw v Time Life Records, 38 NY2d 201; Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338; Di Sabado v Soffes, [9 AD2d 297]; Manowitz v Senter, 62 AD2d 898, app dsmd 45 NY2d 819, 837).”
 Yet, defendant’s opposing affidavit does not supply any evidentiary facts in support of the express warranty which it claims was made. It does not say whether any such express warranty was reduced to writing, nor does it identify the person or persons to whom such express warranty was made, nor does it include any affidavit from anyone who might have heard such express warranty. Nor does defendant’s affidavit factually describe how it used the adhesive. Did it abuse the adhesive? Was. it subjected to freezing temperatures? Was it applied to unclean surfaces? Was it diluted with foreign substances? Was it utilized on improper surfaces which cannot sustain adhesion? Were the solvents allowed to evaporate? These are possible abuses which plaintiff points up in its moving affidavits as reasons why it imprints a warranty disclaimer on a label affixed to its adhesive containers. Yet, defendant does not address itself to any of these questions. Nor does it deny plaintiff’s claim that it was well aware of plaintiff’s policy of asserting nonwarranties in prior dealings between them. What is most incredible is that defendant’s opposing affidavit fails to address itself at all to the label containing the warranty disclaimer on plaintiff’s adhesive containers. Curiously, however, reference is made to it in an accompanying law memorandum which is critical of the size of the print on the label and which alleges that the warranty disclaimer on the label was not "conspicuous” within the meaning of section 2-316 of the Uniform Commercial Code. While "conspicuousness” is an issue of law, there are other considerations pertaining to the label which defendant should have addressed in its opposing affidavit but did not. The label specified that no representative of plaintiff had any authority to waive or change the nonwarranty. It further warned specifically in capitalized print that "if the purchaser does not accept the goods on these terms (of warranty disclaimer) they are to be returned at once, unopened.” The warranty disclaimer opened with an understandable expression of this seller plaintiff’s need for such a warranty disclaimer, namely that seller has "no control over the conditions under which *288 these goods are transported or stored, handled or used.” Even if defendant was beguiled by a salesman who delivered the five-gallon container of adhesive, how does it account for its acceptance some time later of a regular delivery of the 55-gallon drum of the adhesive which contained the same label proclaiming a disclaimer of all warranties? The obligation to explain away this important contention in its opposing affidavit is not met by remaining silent about it. Defendant ignored the label’s warranty disclaimer at its peril. Section 2-314 (subd [2] , par [f|) of the Uniform Commercial Code recognizes that an implied warranty can be found in "the promises or affirmations of fact made on the container or label if any.” If an implied warranty can be found on a label, so can a disclaimer of warranty. And, as a specific written disclaimer, its language governs to overcome the alleged orally expressed warranty which in any event would run afoul of the parol evidence rule even if its existence had been shown by appropriate proofs. (McKinney’s Cons Laws of NY, Book 62 lá, Uniform Commercial Code, § 2-316, NY Ann [1], p 304; Uniform Commercial Code, § 2-202.)
Warranties of merchantability and fitness for use are implied by sections 2-314 and 2-315 of the Uniform Commercial Code, unless excluded or modified pursuant to section 2-316 of the Uniform Commercial Code where, as here, the exact exclusionary words of subdivision (2) of section 2-316 of the Uniform Commercial Code are not used, the exclusion may nevertheless be accomplished by "language which in common understanding calls the buyer’s attention to the exclusion of warranties and makes plain that there is no implied warranty.” (Uniform Commercial Code, § 2-316, subd [3] , par [a].) Or, when the buyer "has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him”. (Uniform Commercial Code, § 2-316, subd [3], par [b].) Or, when the exclusion results from "a course of dealing or course of performance or usage of trade.” (Uniform Commercial Code, § 2-316, subd [3], par [c].)
While an exclusion under any of the three paragraphs of subdivision (3) of section 2-316 of the Uniform Commercial Code is complete "notwithstanding subsection (2)” which requires that an exclusion "in case of a writing must be conspicuous”, the purpose of the requirement of "conspicuousness” appears to nevertheless be embodied, albeit, to a general *289 degree, in the requirement of section 2-316 (subd [3], par [a]) of the Uniform Commercial Code that the exclusion of the subdivision must be by "language which * * * calls the buyer’s attention to the exclusion”. (See definition of "conspicuous” at Uniform Commercial Code, § 1-201, subd [10].) So that the remaining inquiry here is whether the language on plaintiffs label sufficiently called defendant buyer’s attention to the "non-warranty” printed on the label. This is an appropriate inquiry upon a motion for summary judgment, despite the erroneous contention in defendant’s law memorandum that "conspicuousness” is an issue of fact to be determined by a jury. The issue of "conspicuousness” is solely for the court. (McKinney’s Cons Laws of NY, Book 6214, Uniform Commercial Code, § 1-201, subd [10], NY Ann [10], at p 40.)
Subdivision (10) of section 1-201 of the Uniform Commercial Code defines "conspicuous” as follows: "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is 'conspicuous’ if it is in larger or other contrasting type or color”. For instance, bold-face type on a "confirmation” which referred to an arbitration clause on the reverse side has been held to be significant on the issue of the effect of the clause. (Matter of Central States Paper & Bag Co. [Chicopee Mills], 132 NYS2d 69, affd 284 App Div 841, app den 307 NY 943.) The test is whether attention can reasonably be expected to be called to the disclaimer. (Uniform Commercial Code, § 1-201, subd [10], Official Comment 10; Architectural Aluminum Corp. v Maccar, Inc., 70 Misc 2d 495.)
The label is 8 inches in width and 5 inches in length. The left side portion of the label, 3 inches in width and 5 inches in length, is in light blue color with plaintiff seller’s trade symbol and name imprinted thereon in white letters. The rest of the label to the right is 5 inches by 5 inches. It contains a capitalized statement (V2 of an inch from the top, which is Ve of an inch in length and 2Vi inches in width), "stir well before using”. One-quarter inch in length up from the bottom of this white section of the label, the address of plaintiff appears in capitals. Just above it, % of an inch from the bottom of the label, the warranty disclaimer is imprinted in black, 14 of an inch in length and 4!4 inches in width. The entire center of the white portion, some 4 inches in length and *290 5V2 inches in width, is. completely blank, causing all of the black printing (referred to above) to stand out in sharp contrast. The first word of the disclaimer is "non-warranty”, printed in capitals. It is followed by smaller noncapitalized print until the last sentence is reached. That last sentence, printed in capital letters of the same size as the opening "non-warranty”, reads: "if the purchaser does not accept THE GOODS ON THESE TERMS, THEY ARE TO BE RETURNED AT once, unopened.” This court concludes that, considering all factors — the size, prominence and contrast of the capitalized words — the disclaimer on the label was sufficiently conspicuous to have called defendant’s attention to it.
Finally, defendant’s unreasonable failure to examine the product after it was delivered to it, and before its use, not only to determine whether it was fit for the use intended but also to reject and return it if defendant buyer was not willing to be bound by the nonwarranty imprinted upon the label, must be regarded as a proximate cause of the injuries which defendant claims it subsequently sustained. (See Uniform Commercial Code, § 2-316, Official Comment 8; Uniform Commercial Code, § 2-314, Official Comment 13.)
Summary judgment for plaintiff is granted. Defendant’s counterclaim, which could only have succeeded if defendant was successful in the main action, is dismissed.