KAREN N.H.L. HONG, Plaintiff-Appellee, *v.* LILY L.H. KONG
and IVAN F.S. KONG, Defendants-Appellants

NO. 9092

(CIVIL NO. 58486)

MAY 7, 1984
(AMENDED JUNE-5, 1984)

BURNS, C.J., HEEN AND TANAKA, JJ.

AMENDED OPINIONOF THE COURT BY TANAKA, J.

In an action on a promissory note, defendants Lily L.H. Kong
(Lily) and Ivan F.S. Kong (collectively the Kongs) appeal from the

judgment which awarded plaintiff Karen N.H.L. Hong (Hong) $19,600 plus interest, costs, and attorney's fees and dismissed the Kongs' counterclaim. We affirm in part and reverse in part.

The issues on appeal and our answers are as follows:

1. Whether the trial court's finding that the Kongs had failed to prove their alleged defenses and counterclaim was clearly erroneous. No.

2. Whether the trial court erred in excluding a document marked Exhibit J for identification and testimony relating to it. No.

3. Whether the trial court erred in awarding to Hong attorney's fees of $5,362 for prevailing on the counterclaim. Yes.

In December 1977, Hong was the owner of 22,000 shares of capital stock, constituting a 52% interest, of Tan Hing, Inc. (Tan Hing), a Hawaii corporation, doing business as Chinatown Chop Suey. The remaining 48% interest was owned by four of the restaurant's cooks.

By an agreement dated December 29, 1977, Hong agreed to sell and the Kongs agreed to purchase the 22,000 shares of stock for $22,000, payable $2,000 in cash and the balance in monthly installments of $200 each, without interest. The agreement expressly required the Kongs to regularly make the corporate loan payments to Liberty Bank and Oahu Finance Company and the lease rental payments to Yee Hop Realty, Ltd.

On the same date, the Kongs signed a promissory note for $20,000 and a second mortgage to secure their obligations under the agreement. The promissory note included a guaranty by the Kongs to pay Tan Hing's debt to Liberty Bank which Hong had personally guaranteed.

The Kongs made only two installment payments totaling $400 on the note. On July 11, 1979, Hong sued the Kongs for $19,600, the balance due on the note. The Kongs answered, asserting affirmative defenses, *inter alia,* of fraud and payment. They also counterclaimed alleging, *inter alia,* that Hong intentionally, willfully, and falsely represented to them that Tan Hing was "financially sound," had "only a few thousand dollars of outstanding and current debts" other than the loans from Liberty Bank and Oahu Finance Company and fraudulently induced them to purchase the 22,000 shares of Tan Hing's stock. They prayed for cancellation of

the agreement, promissory note, and second mortgage and for an award of general damages of $89,490.14, punitive damages of $100,000, costs and attorney's fees.

After a bench trial commencing on June 28, 1982, the trial court found in favor of Hong. The Kongs appealed.

I.

The Kongs challenge Finding of Fact No. 5 which reads:

5. Defendants have failed to prove the material allegations of their Counterclaim or their alleged defenses.

A trial court's findings of fact "shall not be set aside unless clearly erroneous," Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1981), and they are not clearly erroneous if they are supported by substantial evidence in the record. *Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977); *Stewart v. Smith,* 4 Haw. App. 185, 662 P.2d 1121 (1983). Substantial evidence means credible evidence of sufficient quantity and probative value to justify a reasonable man in reaching a conclusion. *MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 630 P.2d 1075 (1981); *Geldert v. State,* 3 Haw. App. 259, 649 P.2d 1165 (1982). In case of conflict in the evidence, the weight and credibility of testimony are within the province of the trial court and will not be reviewed on appeal. Rule 52(a), HRCP; *Molokoa Village Development Co., Ltd. v. Kauai Electric Co., Ltd.,* 60 Haw. 582, 593 P.2d 375 (1979); *Anders v. State,* 60 Haw. 381, 590 P.2d 564 (1979); *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984).

We apply the foregoing precepts in our consideration of the Kongs' challenge to the trial court's finding.

A.

The Kongs initially argue that the agreement should have been reformed for mutual mistake since Hong understated the business debts. Hong contends that the issue of reformation based upon mutual mistake was never raised in the trial court and should not be considered on appeal. We agree with Hong.

The principal thrust of the Kongs' defense and counterclaim was misrepresentation and fraud by Hong. In their pretrial state-

ment, the Kongs stated that their theory of the case was that Hong "deliberately, willfully, and fraudulently misrepresented the financial condition of the corporation to induce [the Kongs] to purchase her stock in the corporation." Record at 43. In his opening statement at trial, the Kongs' counsel stated that Hong "has committed a fraud upon my client [sic]" and that the Kongs were seeking punitive damages "for the fraud and misrepresentations of [Hong]." I Transcript at 12. The pleadings and transcripts are devoid of any reference to mutual mistake by the parties or to the remedy of reformation of the agreement. Thus, the trial court was never asked to, and did not, consider the alternative theory of mutual mistake in the case.

The general rule is that an issue which was not raised in the lower court will not be considered on appeal. *Kawamoto v. Yasutake,* 49 Haw. 42, 410 P.2d 976 (1966); *In re Keamo,* 3 Haw. App. 360, 650 P.2d 1365 (1982). An appellate court will deviate from this rule only when justice so requires. *Earl M. Jorgensen Co. v. Mark Construction, Inc.,* 56 Haw. 466, 540 P.2d 978 (1975); *Bank of Honolulu v. Anderson,* 3 Haw. App. 545, 654 P.2d 1370 (1982). In determining whether justice requires the consideration of the issue, the appellate court considers three factors: " 'whether consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public import.' " *Earl M. Jorgensen Co. v. Mark Construction, Inc.,* 56 Haw. at 476, 540 P.2d at 985 (quoting *Fujioka v. Kam,* 55 Haw. 7, 9, 514 P.2d 568, 570 (1973)); *Cabral v. McBryde Sugar Co., Ltd.,* 3 Haw. App. 223, 647 P.2d 1232 (1982).

Here, consideration of the new issue will affect the integrity of the findings of fact since the defense or claim of mutual mistake is antithetical to that of misrepresentation and fraud. The new issue, furthermore, is of no great public import. Consequently, we exercise our discretion and decline to consider the issue of reformation based on mutual mistake which was not raised in the court below.

B.

The Kongs claim that since there was substantial evidence to prove misrepresentation and fraud by Hong, Finding of Fact No. 5

is clearly erroneous. We do not agree.

The evidence on the issue of misrepresentation and fraud was conflicting. The indication is that the trial court found the testimony of Hong and witnesses Martin Lynn (Lynn) and Ralph Matsumura (Matsumura) credible, while it disbelieved and gave no weight to the testimony of Lily and witness Robert Chang. As stated above, credibility and weight to be given the testimony of witnesses are the province of the trial court and we will not disturb the court's finding.

Furthermore, upon review of the record, we do not have a definite and firm conviction that a mistake has been made. *Waugh v. University of Hawaii,* 63 Haw. 117, 621 P.2d 957 (1980); *Stewart v. Smith, supra.*

## II.

The Kongs contend that the trial court erroneously excluded Exhibit J, which is a one-page letter dated March 20, 1978, from Lynn, Hong's friend, to Matsumura, the Kongs' attorney at that time, together with a two-page memorandum of a proposed settlement agreement between Hong and the Kongs and testimony relating to it.[1] We disagree.

There is much confusion as to whether Exhibit J was actually admitted into evidence. The briefs imply that Exhibit J was not admitted into evidence. However, during oral argument, the Kongs' counsel claimed that Exhibit J was in evidence by referring to II Transcript at 43 which reads:

THE COURT: I'm satisfied right now.

It is admitted.

(Defendant's [sic] Exhibit J received in evidence)

THE COURT: I'm deferring a ruling on admissibility on Defendant's [sic] I [sic], at this time.

The foregoing occurred during the cross-examination of Lynn by the Kongs' counsel.

---

[1] The Kongs' statement of this particular point in their opening brief does not include "the full substance of the evidence . . . rejected," as required by Rule 3(b)(5), Rules of the Supreme Court (1979). *See also* Rule 103, Hawaii Rules of Evidence (1981). However, despite the rule violation, we have considered the Kongs' appeal on this point.

We believe the court reporter erred in her reference to Exhibit I in the transcript. What probably occurred was that after admitting Exhibit J into evidence, the trial court reconsidered and deferred ruling on its admissibility. The record substantiates our view.

First, Exhibit J itself is marked for identification but bears no stamp or mark that it is in evidence, unlike the other exhibits admitted into evidence. Second, the List of Exhibits prepared by the courtroom clerk and filed on July 21, 1982, indicates that Exhibit J was marked for identification but there is no indication that it was ever admitted into evidence. Third, the clerk's minutes of the trial similarly indicate that defendants' Exhibits A through L were marked for identification, but do not show that Exhibit J was admitted into evidence. Fourth, Exhibit I consists of two pages of Matsumura's handwritten informational notes about Tan Hing, including its stock ownership, outstanding Liberty Bank and Oahu Finance loans, and lease from Yee Hop Realty. Exhibit I was first discussed during the cross-examination of Matsumura who testified after Lynn and it was not mentioned nor offered into evidence while Lynn was on the witness stand. Thus, the court's sudden reference to Exhibit I appears out of context.

We therefore conclude that Exhibit J was not admitted into evidence.

### A.

Based on our review of the record, we find that there is no appealable issue regarding the exclusion of Exhibit J.

After the trial court deferred ruling on the admissibility of Exhibit J, the Kongs' trial counsel[2] did not subsequently request a ruling on it and the trial court never again considered the issue. Thus, there is no evidentiary ruling by the trial court for us to review. *Cf. Apana v. Botts,* 51 Haw. 343, 461 P.2d 134 (1969).

### B.

Despite the fact that Exhibit J was not in evidence, the Kongs' trial counsel asked Lynn whether paragraph two of the two-page

---

[2] The Kongs' trial counsel was Mr. Leslie Fong and their present counsel, Mr. Anson O. Rego, did not participate in the trial.

memorandum which constitutes a part of Exhibit J referred to the reformation of the original agreement. Hong's objection was sustained. For the reasons stated below, we hold that the trial court properly excluded testimony dealing with a substantive portion of the memorandum.

Rule 408, Hawaii Rules of Evidence (HRE) (1981), provides in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

The memorandum includes suggested forms of recitals and agreements to be included in a settlement agreement which Lynn requested Matsumura to prepare.[3] Upon inquiry by the court, the Kongs' trial counsel admitted that "they are settlement agreements." II Transcript at 45. Consequently, the trial court properly excluded testimony referring to Exhibit J on the basis of Rule 408, HRE. *See First Bank of Hilo, Ltd. v. Maguire,* 25 Haw. 43 (1919).

The Kongs contend that despite Rule 408, HRE, testimony regarding Exhibit J was admissible on other grounds, such as establishing grounds for reformation and impeachment of the witness. However, the Kongs' trial counsel never advanced those grounds below and we will not entertain them here. *See Smith v. Laamea,* 29 Haw. 750 (1927). *Cf. MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 630 P.2d 1075 (1981); *Low v. Honolulu Rapid Transit Co., Ltd.,* 50 Haw. 582, 445 P.2d 372 (1968). The Kongs' trial counsel merely offered that testimony about the memorandum would show whether or not the Kongs were responsible for other liabilities "that she [Lily] did not assume as when she first entered into the agreement." II Transcript at 45. The proposed recitals in the memorandum only state that the "[p]arties have had a dispute as to the terms intended in the original agreement, more particularly, in

---

[3] The record does not indicate that a settlement agreement was prepared or signed by the parties.

reference to the amount of liabilities owed by the corporation as at December 31, 1977" (Exhibit J), and announce that the new agreement reforming the original agreement is intended to resolve all differences between the parties. The memorandum was a typical compromise or settlement agreement proposed by Lynn or on behalf of Kong and any testimony regarding it was properly excluded.

Citing *Trask v. Shinn*, 41 Haw. 374 (1956), the Kongs argue that even if Exhibit J included a proposed settlement agreement, it was still admissible and, consequently, testimony regarding it was also admissible. *Trask* involved a defense of accord and satisfaction and our supreme court held that the letters whereby plaintiff offered to reduce his professional bill were admissible to prove that plaintiff's claim was unliquidated, an essential element of that defense. *See Rosa v. Johnston*, 3 Haw. App. 420, 651 P.2d 1228 (1982). Here, no accord and satisfaction defense being involved, the holding in *Trask* is inapplicable.

### III.

Finally, the Kongs claim that the award of attorney's fees of $5,362 to Hong pursuant to HRS § 607-14 (1976)[4] for prevailing on the counterclaim was error because their counterclaim was not an "action in the nature of assumpsit." We hold that the trial court's award was proper under HRS § 607-14 but the amount awarded was excessive.

---

[4] HRS § 607-14 (1976) provides in pertinent part as follows:
   In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

   25    per cent on first $1,000 or fraction thereof.
   20    per cent on second $1,000 or fraction thereof.
   15    per cent on third $1,000 or fraction thereof.
   10    per cent on fourth $1,000 or fraction thereof.
   5    per cent on fifth $1,000 or fraction thereof.
   2.5  per cent on any amount in excess of $5,000.

   The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

## A.

The disposition of this issue requires an analysis of the Kongs' counterclaim. We construe the counterclaim, which is not artistically drafted, as alleging that the Kongs were induced to enter into the December 29, 1977 agreement by the misrepresentation and fraud of Hong. Further, as permitted by Rule 8(a), HRCP, we believe the Kongs seek the alternative relief of (1) general and punitive damages under the common law tort of fraud and (2) rescission of the agreement, note, and mortgage, as well as recovery of a money judgment for an amount paid to or for the benefit of Hong under the law of restitution.

Based on the facts alleged, the Kongs properly could and did seek restitution. Professor Palmer states:

> The rescission of a contract for fraud in the inducement is part of the law of restitution, which is concerned generally with giving relief for unjust enrichment. . . .

> Fraud is a common-law tort for which money damages are recoverable by the injured party. Restitution also often leads to the recovery of a money judgment for an amount paid to the fraudulent party, or for the value of goods or services transferred to him, but such a recovery cannot properly be described as damages. Damages are awarded to compensate the injured party for harm caused by the tort, whereas restitution is aimed at depriving the fraudulent party of benefits obtained by the tort.

I G. Palmer, *The Law of Restitution* § 3.1 at 230 (1978) (hereinafter cited as "Palmer"); *see also* Restatement (Second) of Contracts § 376 (1981); 12 S. Williston, *A Treatise on the Law of Contracts* § 1525 (W. Jaeger 3d ed. 1970) (hereinafter cited as "Williston"). *Cf. Bishop Trust Co., Ltd. v. Kamokila Development Corp.*, 57 Haw. 330, 555 P.2d 1193 (1976) (rescission and restitution where there has been a repudiation, a material breach of a contract, or impossibility of performance).

In *Bishop Trust Co., Ltd. v. Central Union Church of Honolulu*, 3 Haw. App. 624, 656 P.2d 1353 (1983); *Rosa v. Johnston*, 3 Haw. App. 420, 651 P.2d 1228 (1982); and *Smothers v. Renander*, 2 Haw. App. 400, 633 P.2d 556 (1981), we stated that assumpsit was an

action to recover damages or a sum certain for the non-performance of a contract in the context of the specific facts in those cases. We held in *Smothers* that an action for "[s]pecific performance is an equitable remedy of ancient origin" and "is not an action 'in the nature of assumpsit.'" 2 Haw. App. at 404, 633 P.2d at 561. Likewise, in *Civic Realty, Inc. v. Development, Inc.,* 3 Haw. App. 101, 102, 641 P.2d 1361, 1362 (1982), we held that "an equitable action in the nature of reformation . . . would not fall within the scope of § 607-14, HRS." In *Mid-Pacific Dress Manufacturing Co., Ltd. v. Cadinha,* 33 Haw. 456 (1935), our supreme court held that no statute authorized attorney's fees in a suit for cancellation of an assignment even though Revised Laws of Hawaii § 2551 (1925) authorized fees "in all actions of assumpsit." Unlike the present case, however, that case did not involve a claim for restitution.

Although in construing Revised Laws of Hawaii § 219-14 (1955), the predecessor to HRS § 607-14, a federal district court held that an action seeking rescission of an option contract and restitution for the consideration paid is one in assumpsit, *Barkhorn v. Adlib Associates, Inc.,* 225 F. Supp. 474 (D. Haw. 1964), *vacated on other grounds,* 345 F.2d 173 (9th Cir. 1965), this specific question has not been addressed by the Hawaii appellate courts.

Restitution restores a person "to the position he formerly occupied, either by the return of something which he formerly had or by the receipt of its equivalent in money." 66 Am. Jur. 2d *Restitution and Implied Contracts* § 1 (1973). Furthermore, the law of restitution imposes "quasi-contractual liability for unjust enrichment" upon "a person receiving a benefit which it is unjust for him to retain." *Id.* at § 3. *See also* 12 Williston, *supra,* § 1457; 5 A. Corbin, *Corbin on Contracts* §§ 1106, 1107 (1964); J. Perillo, *Restitution in a Contractual Context,* 73 Colum. L. Rev. 1208 (1973).

From its inception as a form of action for breach of simple contract, assumpsit also evolved as "a vehicle for recovery in quasi contract," basically "to deprive the defendant of an unjust enrichment." Palmer, *supra,* § 1.2 at 7. Indeed, "assumpsit will lie upon a promise implied by law, which arises to prevent one man from being inequitably enriched at another's expense." 7 C.J.S. *Assumpsit, Action of* § 10 (1980). *See also* 1 Am. Jur. 2d *Actions* § 13 (1962).

Accordingly, we hold that an action for rescission of an agreement and for restitution of monies paid on account of the agree-

ment is "an action in the nature of assumpsit" within the meaning of HRS § 607-14.

### B.

The maximum attorney's fees allowable under HRS § 607-14 is the amount obtainable under the schedule set forth in that section. The $5,362 awarded Hong was based on the schedule applied to the total amount of $189,490.14 claimed in the Kongs' counterclaim. This was error.

The total amount prayed for in the counterclaim included $100,000 for punitive damages which is not awardable in an action for restitution. Therefore, the maximum attorney's fees allowable under HRS § 607-14 to Hong on the counterclaim is $2,862.

### IV.

Hong contends that the Kongs' "appeal is totally and completely frivolous," Answering Brief at 28, and seeks attorney's fees on appeal pursuant to Rule 9(e), Rules of the Intermediate Court of Appeals (1983).

Our reversal of the trial court's award of attorney's fees, see Part III B, *supra,* disposes of Hong's contention that the appeal is frivolous, and we deny her claim for attorney's fees on appeal.

### V.

We reverse the trial court's award of attorney's fees of $5,362 to Hong on the counterclaim and remand with instruction that the amount be reduced to $2,862. We affirm the judgment in all other particulars.

Remanded for further proceedings consistent with this opinion.

*Anson O. Rego (Joanne M. Lanham* with him on the reply brief; *Anson O. Rego,* Attorney at Law, A Law Corporation, of counsel) for defendants-appellants.

*Harold W. Goble (Harold W. Goble,* Attorney at Law, A Law Corporation, of counsel) for plaintiff-appellee.