MICHAEL S. MYERS, Plaintiff-Appellant, *v.* RONALD B. COHEN and PATRICK J. RYAN, Defendants, and JOHN RAPP and GOODSILL, ANDERSON & QUINN, Defendants-Appellees

NO. 9203

(CIVIL NO. 71985)

JULY 6, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In a tort action, plaintiff Michael S. Myers (Myers) appeals from a summary judgment in favor of defendants, attorney John Rapp

(Rapp) and the law partnership of Goodsill, Anderson & Quinn (GA&Q) (collectively appellees). The dispositive issue on appeal is whether the court below erred in granting the summary judgment. We answer no and affirm.

Viewing the evidence and the inferences therefrom in the light most favorable to the non-moving party, as we must under Rule 56, Hawaii Rules of Civil Procedure (HRCP) (1981), *Fernandez v. Tenbruggencate,* 65 Haw. 226, 649 P.2d 1144 (1982); *Hawaii Leasing v. Klein,* 4 Haw. App. 1, 658 P.2d 343 (1983), the record reveals the following facts.

Myers and Ben Gromet (Gromet) were the master lessees of certain property in Honolulu. On May 25, 1979, Myers and Gromet sublet a portion of the property (the premises) to John H. McClellan (McClellan) for a term of five years beginning June 1, 1979. In September 1979, McClellan became delinquent in his rent payments. Thereafter, he told Myers and Gromet that in July 1979 he had entered into a secret agreement with Ronald B. Cohen (Cohen) and Patrick J. Ryan (Ryan) whereby each would own a one-third share of Hawaii Mini-Storage, Inc. (HMS), which operated a business on the premises. In October 1979, Myers and Gromet filed a summary possession action against McClellan. A settlement was reached before hearing, whereby McClellan agreed to surrender the sublease, and Myers and Gromet agreed to allow HMS to continue operating on the premises and to look for an equity partner for the business to enable it to pay the rent. However, Cohen and Ryan were not parties to the settlement.

In November 1979, Ryan threatened to tear out the fixtures in the premises. Myers and Gromet filed a complaint against Cohen, Ryan, and HMS in First Circuit Court Civil No. 59644 (Civil No. 59644) to enjoin such action. On December 6, 1979, on behalf of Cohen, Ryan, and HMS, Rapp answered by denying, *inter alia,* that the lease was in default and counterclaimed for damages. The counterclaim alleged, *inter alia,* that Myers and Gromet had fraudulently schemed with McClellan, wrongfully filed a summary possession action, schemed to appropriate HMS from its partners, induced McClellan to break his agreement with Cohen and Ryan, used deceptive business practices, and committed other unspecified intentional torts. At the time the counterclaim was filed, Rapp was aware that the rental payments were in arrears.

On January 14, 1980, Rapp filed a chapter 11 petition in the Bankruptcy Court for the District of Hawaii on behalf of HMS, stating that HMS was the tenant of the premises, while aware that McClellan was the actual sublessee. In June 1980, the bankruptcy proceeding was dismissed as moot. On November 13, 1981, the counterclaim in Civil No. 59644 was found to be frivolous and unsupported by the law and the facts, and attorneys' fees were awarded to Myers and Gromet.

On June 25, 1982, Myers filed this action, Civil No. 71985, against Cohen and Ryan for malicious prosecution, abuse of process, and deceptive trade practices. He sought compensatory and punitive damages, treble damages under Hawaii Revised Statutes (HRS) § 480-13, and costs and attorneys' fees. On June 29, 1982, he filed an amended complaint in Civil No. 71985, naming appellees as additional defendants. On September 21, 1982, appellees filed a motion for summary judgment pursuant to Rule 56, HRCP, and for final judgment pursuant to Rule 54(b), HRCP (1981). After a hearing, the trial court entered its order on November 30, 1982, granting a summary judgment in favor of appellees, determining that there was no just reason for delay, and directing the entry of final judgment.[1] This timely appeal followed.

Myers contends that the facts in the record and the reasonable inferences therefrom viewed in the light most favorable to him show the commission by Rapp[2] of malicious prosecution, abuse of process, or some other intentional torts.[3] He asserts, therefore, that appellees were not entitled to a summary judgment as a matter of law. We disagree.

---

[1] The record indicates that the claims against defendants Cohen and Ryan remain pending and unadjudicated.

[2] Myers also argues that the law firm of Goodsill, Anderson & Quinn is liable since it ratified John Rapp's actions. However, our disposition of the claims against Rapp renders this argument moot. *Cf. Wong v. Board of Regents, University of Hawaii,* 62 Haw. 391, 616 P.2d 201 (1980); *Wiginton v. Pacific Credit Corp.,* 2 Haw. App. 435, 634 P.2d 111 (1981).

[3] Myers' briefs include no discussion regarding the claim based on "deceptive acts and practices in the conduct of trade or commerce within the meaning of HRS § 480-2, and treble damages" against Rapp. We conclude that Myers has abandoned this claim.

Since Myers' complaint in Civil No. 71985 is not set out in separate counts, it is not entirely clear which of Rapp's Acts allegedly constitute the elements of malicious prosecution, abuse of process, and other tortious conduct. Thus, we will attempt to sort them out in our analysis of each claim.

## I. MALICIOUS PROSECUTION

The only recently reported case in Hawaii that addresses the issue of malicious prosecution where the prior proceeding was a civil action is *Brodie v. Hawaii Automotive Retail Gasoline Dealers Ass'n, Inc.*, 2 Haw. App. 316, 631 P.2d 600 (1981), *rev'd*, 65 Haw. 598, 655 P.2d 863 (1982). On certiorari, the Hawaii Supreme Court reversed as unnecessary our remand of the case which gave the appellant an opportunity to adduce evidence of malice. However, it "concur[red] with [our] exposition of the law governing malicious prosecution and motions for summary judgment." *Brodie*, 65 Haw. at 599, 655 P.2d at 864.

Under *Brodie*, the following elements are essential in proving a claim for malicious prosecution. There must be proof that the prior proceeding was (1) terminated in favor of the plaintiff in the malicious prosecution action, (2) brought without probable cause, and (3) initiated with malice. W. Prosser, *Law of Torts* § 120 (4th ed. 1971) (Prosser). The defendant in *Brodie* was a lay association. Citing the Restatement (Second) of Torts (1977) (Restatement), Myers claims that the elements to prove malicious prosecution are different when the defendant is an attorney. Specifically, he states that as to the third element in a malicious prosecution case involving an attorney-defendant, it may be shown that the suit was motivated by malice or, alternatively, "was instituted for some purpose other than the proper adjudication of the claim on the merits." Opening Brief at 13. We disagree.

The Restatement does indicate that an attorney may be liable for malicious prosecution if he acts for an improper purpose. Restatement § 674 comment d. However, in the general principles enunciated in § 674, the Restatement indicates that any person is subject to liability for malicious prosecution if "he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceed-

 

ings are based" and notes in § 676 comment c that the element of malice "is frequently expanded ... to cover any improper purpose." Thus, "improper purpose" can be interpreted as a possible definition of malice, rather than as a separate element. *See also* Prosser at 855. We believe that the essential elements for an attorney-defendant are the same as those outlined in *Brodie.*

### A. Termination of Prior Proceeding

The first element under *Brodie* will be proved sufficiently if the plaintiff can show that the prior proceeding terminated in his favor, and "in such a manner that it cannot be revived." Prosser at 839. Clearly, there was such a disposition in this case.

### B. Probable Cause

Appellees' motion for summary judgment included numerous excerpts from the depositions of Myers, Gromet, and McClellan, taken before the filing of the counterclaim in Civil No. 59644, to show that there was probable cause to file it. We believe, however, that the record discloses a genuine issue of material fact as to the existence of probable cause. Nevertheless, that is of no avail to Myers, as will be shown below.

### C. Malice

Even assuming that there is no probable cause, there must be a finding of malice before a malicious prosecution action can succeed. Additionally, since malice is "an essential element of the claim for relief, there must come a time when the plaintiff has to show facts upon which he contends that malice existed." *Brodie,* 2 Haw. App. at 323, 631 P.2d at 605. Such evidence must be specific and extrinsic. *Id.* If such evidence cannot be produced, then summary judgment may properly be granted. *Id.; see also* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: *Civil* 2d § 2730 (1983).

In his response to the motion for summary judgment, Myers relied on four specific and extrinsic items to prove malice. They were: (1) the November 13, 1981 order of Judge Wakatsuki award-

ing attorneys' fees to Myers and Gromet (the Order); (2) the unsworn statements of Cohen and Ryan made in the proceedings held on June 3, 1981 before Judge Sodetani (the Statements); (3) the affidavit of Peter Wheelon (Wheelon), counsel for McClellan (the Affidavit); and (4) an August 21, 1980 letter from Rapp to Jack C. Morse (Morse), attorney for Myers and Gromet (the Letter).

## 1.  The Order

The Order granting attorneys' fees to Myers and Gromet, stated that the counterclaim in Civil No. 59644 was "completely frivolous and totally unsupported by the facts and law." Record at 249-50. Myers contends that this recitation is proof that the counterclaim was filed with malice. Rapp argues that he had no notice of the hearing, was not present, and did not represent Cohen, Ryan, or HMS in the proceedings before Judge Wakatsuki. Thus, he argues, he had no opportunity to litigate the matter, and should not be bound by the Order. He further argues that Civil No. 59644 was dismissed because a statement of readiness was never prepared, and thus the Order did not address the merits of the counterclaim. We agree with Rapp.

The Order lists another attorney as the representative of HMS. Furthermore, the transcript of the June 3, 1981 proceedings before Judge Sodetani, five months earlier, already lists Cohen and Ryan as appearing *pro se,* and another attorney as the representative of HMS. There is nothing in the record to indicate that Rapp had notice of the hearing on the request for attorneys' fees. Absent such notice or an opportunity to argue the matter, Rapp is not bound by the Order. *See Employees' Retirement System v. Aina Alii, Inc.,* 64 Haw. 457, 643 P.2d 65 (1982); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 40 (1966); *cf. Henderson v. Pence,* 50 Haw. 162, 434 P.2d 309 (1967). Myers argues that these cases do not involve the effect of an order against a party's attorney. However, it is clear from the record that Rapp was no longer the attorney for Cohen, Ryan, or HMS.

Additionally, the transcript supports Rapp's argument that the Order did not address the merits of the counterclaim. Judge Sodetani stated that "the record indicates that [the parties] did not file [their] statement of readiness within one year as required by the

rules." Record at 254. He further noted that "a notice of . . . proposed dismissal was filed in this case." *Id.* Although the hearing before Judge Sodetani was to entertain Cohen's objection to the proposed dismissal, Cohen stated that he did not mind a dismissal being entered "[a]s long as there is no prejudice one way or the other." Record at 255.

### 2. The Statements

As noted above, Cohen and Ryan appeared *pro se* at the June 3, 1981 proceedings before Judge Sodetani. They represented to the judge that they had not authorized Rapp to file the counterclaim on their behalf as individuals. Myers claims that this shows that Rapp acted as a principal in filing the counterclaim since he had no authority from his clients to do so. This, he argues is a "prima facie case of malicious prosecution — in that an action filed without authority is filed without probable cause" (quoting *Huene v. Carnes,* 121 Cal. App. 3d 432, 175 Cal. Rptr. 374, 377 (1981) ). Reply Brief at 14. Rapp claims that the statements of Cohen and Ryan made to Judge Sodetani are inadmissible for summary judgment purposes since they were not "sworn to" as required by Rule 56, HRCP. We agree with Rapp.

"A party making or opposing a motion for summary judgment may only rely on facts which are before the court as provided in Rule 56, H.R.C.P." *Au v. Au,* 63 Haw. 210, 213, 626 P.2d 173, 176-77 (1981). Rule 56(c), HRCP, provides that the facts relied on should appear in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."[4] Here, Myers relies on the unsworn statements of Cohen and Ryan appearing in a transcript of a proceeding in Civil No. 59644.

Rule 56(e), HRCP, states that affidavits opposing a motion for summary judgment shall be "made on personal knowledge." It further requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." "If . . . the transcript of the testimony at the [proceeding] had been properly certified, there is no reason why it

---

[4] In our jurisdiction, the evidentiary documents must be specifically called to the attention of the trial court. *Munoz v. Yuen,* 66 Haw. 603, 670 P.2d 825 (1983).

may not be considered as an affidavit of the witness, *assuming they were under oath at the [proceeding]."* 6 J. Moore, Moore's Federal Practice ¶ 56.22[1] at 56-1327 (2d ed. 1982) (emphasis added); *cf. Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157 (7th Cir. 1963). Although the transcript itself is probably admissible, since the affidavit of Morse attests to its authenticity, the statements of Cohen and Ryan are not. Their statements are not testimony under oath, but merely argument as *pro se* counsel.

Myers' reliance on *Freitas v. City & County,* 58 Haw. 587, 574 P.2d 529 (1978), is misplaced. *Freitas* holds that facts may be admitted in counsel's memorandum in opposition to a motion for summary judgment. Here, there was no admission by appellees, by memorandum or otherwise, that Cohen and Ryan did not authorize Rapp to file the counterclaim.

We note in passing that Myers makes no allegation that Rapp was not authorized to file the counterclaim on behalf of HMS. In fact, he admits that Rapp had "arguable authority" to do so. Opening Brief at 14.

### 3.   The Affidavit

Myers asserts that Wheelon's affidavit shows malice on the part of Rapp. In his affidavit, Wheelon relates a telephone conversation he had with Rapp in October 1979 in which Wheelon quotes Rapp as stating, "Oh, come on now Peter [affiant], you know that I can screw them [Gromet and Myers] over by filing a Chapter 11 Bankruptcy petition. I don't care what happens to them. I can get at least 6 to 12 months time by filing a petition." Record at 265. At the time of this conversation, Rapp and Wheelon were engaged in negotiating a settlement in Civil No. 59644.

"[A] motion for summary judgment should be decided on the basis of admissible evidence." *Munoz v. Yuen,* 66 Haw. 603, 605, 670 P.2d 825, 826 (1983). *See* Rule 56(e), HRCP. Rule 408, Hawaii Rules of Evidence (HRE) states that:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its

amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. [Emphasis added.]

The commentary to Rule 408, HRE, notes that it is identical to the federal rule. Thus, case law in the federal courts as well as in Hawaii can be used to construe the rule. Our supreme court has noted that "[i]t is well settled, as a matter of sound policy, that the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial of another law suit by another person asserting a claim related to the controversy settled." *In re Estate of Magoon,* 58 Haw. 345, 355, 569 P.2d 884, 891 (1977) (quoting *Grady v. deVille Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir. 1969)). Similarly, the Ninth Circuit has stated that, "[b]y preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement." *United States v. Contra Costa County Water District,* 678 F.2d 90, 92 (9th Cir. 1982). *See also First Bank of Hilo v. Maguire,* 25 Haw. 43 (1919); *Hong v. Kong,* 5 Haw. App. 174, 683 P.2d 833 (1984); *cf.* Rule 68, HRCP.

Wheelon's affidavit is clearly intended to show Rapp's liability, and relates to statements made during settlement negotiations. Since our expectation is that attorneys will operate with the highest ethical standards in all phases of practice, including settlement negotiations, we affirm the policy to encourage compromise and will not interfere in the process. We find that Rapp's statement, as attested to by Wheelon, is inadmissible under Rule 408, HRE.

### 4. The Letter

Finally, Myers relies on an August 21, 1980 letter from Rapp to Morse in which Rapp offers to drop certain of the counterclaim

counts on the condition that Morse's clients "stipulate that the withdrawal of [those claims] will not be deemed to raise any inferences or presumptions that the claims were alleged or prosecuted in bad faith." Record at 272. The Rule 408, HRE, analysis of the Affidavit, *supra,* applies to the Letter as well. Since Myers utilizes the Letter to prove Rapp's liability, and since it includes proposed settlement offers, it too is inadmissible under Rule 408, HRE.

Based on the above analysis, we must uphold the summary judgment as to malicious prosecution.

## II. ABUSE OF PROCESS

Abuse of process is similar to malicious prosecution to the extent that the basis common to both is the imprudent use of the courts. However, "[a]buse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Prosser at 856. Our supreme court in an early case noted that "[a]n abuse [of process exists] where the party employs it for some unlawful object, not the purpose which it was intended by the law to effect; in other words, a perversion of it." *Wilcox v. Berrey,* 16 Haw. 37, 42 (1904) (quoting *Mayer v. Walter,* 64 Pa. 283, 285-86 (1870)).

Professor Prosser states:

> The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

Prosser at 857. *See also* Restatement § 682; Note, *Torts-Abuse of Process Defined,* 28 Ark. L. Rev. 388 (1974). Professors Harper and James claim that the tort is consummated when the defendant "attempts to attain some collateral objective, outside the scope of the operation of the process employed." F. Harper & F. James, *The Law*

*of Torts* § 4.9 at 331 (1956).

The tort of abuse of process was first recognized, and is most commonly found, in a situation involving the misuse of a specific writ, such as a writ of garnishment, attachment, or execution. *See* Note, *The Nature and Limitations of the Remedy Available to the Victim of a Misuse of the Legal Process: The Tort of Abuse of Process,* 2 Val. U. L. Rev. 129 (1967) (Note). However, courts have "recognized the existence of the tort of abuse of process in situations involving a wrongful use of an entire law suit," such as in *Spellens v. Spellens,* 49 Cal. 2d 210, 317 P.2d 613 (1957). Note at 133.

Although an abuse of process action is usually directed against the plaintiff in a prior or concurrent suit who allegedly misused the legal process, his attorney may also be sued and held personally liable if he maliciously participates in the abuse of process. *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947); 1 Am. Jur. 2d *Abuse of Process* § 19 (1962); Annot., 97 A.L.R.3d 688 (1980).

In the amended complaint, Myers alleges that the counterclaim in Civil No. 59644 was filed "as a part of a scheme to extort money" from him and Gromet and "[a]s part of said scheme and in furtherance thereof," Rapp filed the bankruptcy petition for HMS. Record at 6. Thus, Myers asserts that the "scheme to extort money" is the collateral objective.

To "extort" means "to obtain money or other valuable thing either by compulsion, by actual force, or by the force of motives applied to the will, and often more overpowering and irresistible than physical force." Black's Law Dictionary 525 (5th ed. 1979). We believe the use of the verb "extort" by Myers is an overstatement. We perceive Myers' theory to be (1) that Rapp filed "a completely frivolous Counterclaim . . . and attempt[ed] to scare [Myers and Gromet] with an ad damnum in excess of one million dollars" (Opening Brief at 8) with the hope of attaining some sort of settlement and (2) that he filed the bankruptcy petition for the purpose of depriving Myers and Gromet of rental income and thereby "extorting a modification of the Sublease." Opening Brief at 9.

We find no collateral objective in the filing of either the counterclaim or the bankruptcy petition. To constitute an abuse of process, there must be a misuse of process "for any purpose other than that which it was designed to accomplish." Restatement § 682 comment a.

Here, the counterclaim sought rescission of the surrender of the sublease and damages for the alleged wrongful acts of Myers and Gromet. Even if frivolous, the counterclaim had "the purpose of settlement which is includable in the goals of proper process." *Bickel v. Mackie,* 447 F. Supp. 1376, 1383 (N.D. Iowa 1978). If the counterclaim was frivolous and without probable cause, the proper action was one for malicious prosecution which fails under our discussion in Part I, *supra. See Tappen v. Ager,* 599 F.2d 376 (10th Cir. 1979); *Ewert v. Wieboldt Stores, Inc.,* 38 Ill. App. 3d 42, 347 N.E.2d 242 (1976).

The petition filed by Rapp was for a chapter 11 reorganization of HMS under the Bankruptcy Act of 1978, 11 U.S.C. §§ 101, *et seq.* (1982),[5] and did not involve Cohen and Ryan. The policy of chapter 11 is to permit the successful rehabilitation of debtors. The filing of the petition automatically stayed Civil No. 59644 and enjoined further proceedings against HMS regarding the sublease in which it claimed an equitable interest and the rents due thereunder. 11 U.S.C. §§ 103(a) & 362. If the sublease was in effect as to HMS, it could have either assumed or rejected the sublease pursuant to 11 U.S.C. §§ 365 & 1107, and the post-petition rents would have been administrative expenses entitled to priority. 11 U.S.C. § 503. Furthermore, 11 U.S.C. § 1129(b) accords the court "cramdown" powers to confirm a plan over the objection of any class of creditors or equity security holders provided that certain criteria of fairness are met. *See* K.N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code,* 53 Am. Bankr. L.J. 133 (1979). Moreover, if rehabilitation cannot be effectuated, the court may convert the chapter 11 reorganization case into a chapter 7 liquidation case. 11 U.S.C. § 1112(b).

The bankruptcy code allows HMS to do what Myers contends that Rapp was endeavoring to attain collaterally for HMS.[6] We cannot find any collateral objective or any misuse of process in the filing of the chapter 11 petition.

---

[5] The major portion of the Bankruptcy Act of 1978 became effective on October 1, 1979.

[6] In a chapter 11 proceeding, the bankruptcy court can allow a debtor to modify or reject a collective bargaining agreement. *National Labor Relations Board v. Bildisco and Bildisco,* ___ U.S. ___, 104 S. Ct. 1188, 79 L.Ed.2d 482 (1984).

We therefore hold that appellees were entitled to a summary judgment on the abuse of process claim.

### III.   OTHER INTENTIONAL TORTS

Finally, Myers contends that other intentional torts were committed by Rapp. We read the amended complaint to allege claims for malicious prosecution, abuse of process, and deceptive business practices under HRS § 480-2. Myers argues, however, that his action includes claims based on intentional torts committed by Rapp of (1) a "scheme to extort" and (2) a breach of legal duty owed to third parties.

#### A.   The Extortion Scheme

Citing Webster's Third New International Dictionary, Myers defines extortion as follows: "[T]o obtain from an unwilling or reluctant person by importunity, argument or ingenuity," "[t]o elicit from someone unwilling by the obvious or apparent existence of an intrinsic compelling force," and suggests that the filing of the counterclaim in Civil No. 59644 and the filing of the bankruptcy petition constituted extortion. Record at 241.

We are unable to find any indication of a common law tort of extortion, and Hawaii does not have a civil extortion statute. Furthermore, neither the Restatement nor Prosser delineates extortion as an intentional tort. Rather, it is usually raised as the collateral purpose in an abuse of process action. *See* Part II, *supra.*

#### B.   Breach of Legal Duty

Citing Note, *A Lawyer's Duty to Reject Groundless Litigation,* 26 Wayne L. Rev. 1561, 1572 (1980), Myers states that "a duty is created whenever harm to a certain plaintiff is foreseeable" (Opening Brief at 17), alleges that harm to Myers and Gromet from Rapp's filings was foreseeable, and concludes that Rapp is liable for the harm. He also cites the Code of Professional Responsibility (CPR), made applicable to attorneys in Hawaii by Rule 16.2 of the Rules of the Supreme Court, and Hawaii Revised Statutes (HRS) § 663-1, as sources of a duty which appellees have breached. This

argument appears to allege negligence, not an intentional tort, and raises an issue of competing policies.

Although there are limits to how far an attorney should go in representing a client, there is also a requirement that clients be zealously represented "within the bounds of the law." *Giuliani v. Chuck,* 1 Haw. App. 379, 384, 620 P.2d 733, 737 (1980); *see* CPR, canon 7.

In a case with issues similar to those facing us, the Michigan Supreme Court noted that "creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship." *Friedman v. Dozorc,* 412 Mich. 1, 24, 312 N.W.2d 585, 591 (footnotes omitted). *See also Weaver v. Superior Court of Orange County,* 95 Cal. App. 3d 166, 156 Cal. Rptr. 745 (1979); *Norton v. Hines,* 49 Cal. App. 3d 917, 123 Cal. Rptr. 237 (1975); *Berlin v. Nathan,* 64 Ill. App. 3d 940, 21 Ill. Dec. 682, 381 N.E.2d 1367 (1978), *cert. denied,* 444 U.S. 828, 100 S. Ct. 53, 62 L.Ed.2d 36 (1979).

The Michigan court apparently agreed with courts in jurisdictions "rel[ying] on the policy of encouraging free access to the courts." 412 Mich. at 27, 312 N.W.2d at 593; *see also Weaver v. Superior Court of Orange County, supra; Brody v. Ruby,* 267 N.W.2d 902 (Iowa 1978). We agree with that policy. *See Brodie v. Hawaii Automotive Retail Gasoline Dealers Ass'n, Inc., supra.*

Since the pleadings did not sufficiently allege facts constituting other "intentional torts" and the facts in the record do not support any other "intentional tort," summary judgment in favor of appellees on this point was proper.

Affirmed.

*Jack C. Morse (Morse & Nelson,* Attorneys at Law, A Law Corporation, of counsel) for plaintiff-appellant.

*James F. Ventura (Libkuman, Ventura, Ayabe & Hughes,* of counsel) for defendants-appellees.