294 P.3d 1076

**KARPELES MANUSCRIPT LIBRARY,**
Plaintiff–Appellee,

v.

**Stella Faye DUARTE; Morylee Fernandez, and John and Mary Does 1–10,**
Defendants–Appellants.

**No. CAAP–11–0000166.**

Intermediate Court of Appeals of Hawai'i.

Jan. 31, 2013.

Gary Victor Dubin, Frederick J. Arensmeyer, and Simeon L. Vance, on the briefs, for Defendants–Appellants.

Philip R. Brown, Effie Steiger, and Justin M. Chiu, on the briefs, for Plaintiff–Appellee.

FOLEY, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by FUJISE, J.

Defendants–Appellants Stella Faye Duarte (Duarte) and Morylee Fernandez (Fernandez) (collectively Defendants) appeal from the Judgment, entered on December 21, 2010 in the Circuit Court of the Fifth Circuit (Circuit Court).[1]

On December 21, 2010, the Circuit Court granted summary judgment in favor of Plaintiff–Appellee Karpeles Manuscript Library Museum (Karpeles) and adjudged Karpeles as the legal owner of the subject property (the Property), held that Karpeles was entitled to possession of the Property, and issued a Writ of Ejectment against Defendants.

On February 15, 2011, the Circuit Court granted Karpeles's Motion for Statutory Attorneys Fees and Costs which awarded Karpeles $52,657.43 in attorneys' fees, tax, and costs against Defendants.

On appeal, Defendants claim that the Circuit Court erred by granting Karpeles's Motion for Summary Judgment because Defendants demonstrated a genuine issue of material fact and that Karpeles failed to release the mortgage after Defendants invoked their right to rescission under 15 United States Code (USC) § 1635 (2010).[2] Defendants also claim that Karpeles was not entitled to attorneys' fees pursuant to Hawaii Revised Statutes (HRS) § 607–14 (Supp.2012) because an ejectment action is not in the nature of assumpsit and they are

---

1. The Honorable Kathleen N.A. Watanabe presided.

2. Defendants also claim that in granting summary judgment in favor of Karpeles, the Circuit Court failed to address their defenses of common law fraud and unfair and deceptive practices, pursuant to Hawaii Revised Statutes (HRS) Chapter 480. The extent of Defendants' argument on appeal with respect to their fraud and

Chapter 480 claims is that "Similarly, Appellants' fraud and Chapter 480 defenses remain unrebutted, and Karpeles clearly was not entitled to judgment as a matter of law for that additional reason." Defendants' argument is conclusory and fails to provide specific arguments regarding their fraud and Chapter 480 claims. Therefore, the point of error is waived. Hawai'i Rules of Appellate Procedure Rule 28(b)(7).

the prevailing party on their rescission claim.

## I. BACKGROUND

On September 1, 2009, Karpeles filed a Complaint for Ejectment (Complaint), averring that it had conducted a nonjudicial foreclosure on the Property pursuant to a power of sale provision in a recorded mortgage, that it was the highest bidder at auction and received a quitclaim deed for the Property which was recorded at the Hawaiʻi State Bureau of Conveyances on August 25, 2009, but that Defendants remained on the property as trespassers and/or uninvited guests. Karpeles requested a Writ of Ejectment, pursuant to HRS § 603–36 (1993).

On October 1, 2009, Defendants filed an Answer to the Complaint, asserting seventeen defenses, including, inter alia, breach of contract, violation of HRS § 480–12 (2008), rescission under the federal Truth–In–Lending Act (TILA) for, inter alia, failure to provide two complete notices of the right to cancel,[3] fraud, and common law rescission.

On October 30, 2009, Karpeles moved for summary judgment and for a writ of ejectment (First Motion for Summary Judgment), claiming that it had title to the Property through a quitclaim deed from the non-judicial foreclosure and, therefore, was entitled to possession of the Property.

On December 17, 2009, Defendants filed a Memorandum in Opposition to the First Motion for Summary Judgment. In her declaration attached to the memorandum, Duarte claimed that Eric Capistran (Capistran), of Silva Capital, assisted her in completing a loan application and suggested that her son,

Fernandez, should be added to the title of her home and on the loan application so that she could qualify for a new loan. Defendants alleged that a completed Uniform Residential Loan Application (Loan Application) was then provided to them for their signature in order to obtain a "cash out" refinancing and that they signed the form but did not notice that the form falsely stated that their combined monthly income was $9,500, when in fact, their combined monthly income was $2,547. Defendants also claimed that after signing the Notice of Right to Cancel, they were handed blank copies which differed from the notices that they had signed.

Duarte admitted that they ultimately obtained a loan of $357,000, secured by a mortgage on the Property. Duarte claimed that upon receiving a copy of the Loan Application, she was surprised to see that the Loan Application falsely stated that her business was making $4,000 per month, her other monthly income was $1,700, and Fernandez's monthly income was $3,800. On July 5, 2009, after learning that they were not provided two complete copies of the Notice of Right to Cancel, they exercised their right to cancel the transaction by sending a letter to Karpeles.

Based upon these facts, Defendants claimed that granting summary judgment was inappropriate because there was a genuine issue of material fact. Attached as an exhibit to Defendants' Memorandum in Opposition were copies of the two Notices of Right to Cancel, one for each of the Defendants, that they received upon signing. Each copy lacked a signature for an Acknowledgment of Receipt and lacked a date

---

**3.** Section 1635(a) of the United States Code, Title 15 (2010) states:

(a) Disclosure of obligor's right to rescind
Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the deliv-

ery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

informing Defendants of the time period in which they might exercise their right to cancel. Also attached as an exhibit was a copy of a letter dated July 5, 2009 by Defendants' counsel, informing Karpeles that Defendants wished to exercise their right to cancel and requesting that Karpeles not proceed with a nonjudicial auction scheduled for July 6, 2009.

On January 25, 2010, the Circuit Court issued an order denying the First Motion for Summary Judgment.

On October 14, 2010, Karpeles again moved for summary judgment and a writ of ejectment (Second Motion for Summary Judgment), stating that Defendants each signed a Notice of Right to Cancel but admitted that Defendants "were given two copies of the unsigned "Notice of Right to Cancel" which did not include the handwritten dates and redaction which was initialed by DUARTE and FERNANDEZ." Karpeles also admitted that "on July 5, 2009, counsel for DUARTE and FERNANDEZ, Gary Victor Dubin, Esq., sent KARPELES a letter notifying KARPELES that DUARTE and FERNANDEZ were exercising their right to rescind and/or cancel the Loan." Karpeles also noted that Defendants stopped paying on the loan in April 2009 and were in default since that time. Karpeles maintained that the notice of right to cancel was adequate to inform Defendants of their right to cancel and that Defendants failed to timely cancel. Karpeles did not contest that Defendants could use their TILA-rescission argument to challenge the validity of their quit-claim deed in defense to the ejectment action.

On November 15, 2010, Defendants filed a Memorandum in Opposition to the Second Motion for Summary Judgment. In it, Defendants again argued that they were not provided with two complete copies of a Notice of Right to Cancel as required by TILA. Defendants claimed that they timely exercised their right to cancel, pointing to their Exhibit "G," the previously submitted July 5, 2009 letter from Defendants' counsel and claimed that they thereby tendered payment in compliance with the TILA ("my clients hereby consider said loan transaction and related mortgage and promissory note null and void ... tendering hereby any and all amounts otherwise deemed due in accordance with state and federal law").[4] Defendants claimed that whether they were entitled to rescission must be determined before summary judgment could be granted on whether Defendants could tender payment. Defendants also claimed that the loan was subject to rescission based upon common law fraud and unfair and deceptive practices pursuant to HRS Chapter 480, neither of which required tender of any amount. Defendants also again claimed that the false Loan Application was fraudulent and an unfair and deceptive practice.

On November 24, 2010, the Circuit Court held a hearing on the Second Motion for Summary Judgment. Karpeles did not argue that Defendants waived assertion of re-

---

**4.** Pertinent to their TILA allegations, this letter read,

> On behalf of and at the direction of my clients, Stella Faye Duarte and Morylee Fernandez, whose property address is stated immediately above, you are hereby notified that they each hereby timely exercise their right to cancel said referenced loan transaction and mortgage and promissory note related thereto within three years of loan consummation, based upon each and all of the following:
> 1. numerous Federal Truth–In–Lending–Act violations, including the failure to deliver to each of them at closing two completed copies of notices of the right to cancel (see, for example, the attached copies lacking in a cancellation date as well as bearing an inaccurate transaction date) and to provide each of them with the requisite, accurate good faith disclosures, misstating, for example, their annual

percentage rate, and charging for a prior undisclosed, highly excessive notary fee;

. . . .

> You are hereby notified that my clients hereby consider said loan transaction and related mortgage and promissory note null and void, and hereby demand all appropriate state and federal common law and statutory relief, without prejudice to their right to an award of appropriate exemplary damages, including treble as well as punitive damages—tendering hereby any and all amounts otherwise deemed due in accordance with state and federal law— and demanding, accordingly, without prejudice to their other damages, a return to them of any and all payments and overpayments made by them, or on their behalf, and all credit-related closing costs heretofore paid by them in connection with said promissory note and said mortgage.

scission under TILA or that Defendants failed to file a petition pursuant to HRS § 667–35 (Supp.2009). Instead, Karpeles argued that Defendants were required to show that they had the ability to pay back the loan if they sought rescission. Karpeles noted that Defendants defaulted on the loan in April 2009, remained on the property without making payments, and did nothing to litigate their right to rescission. Karpeles argued that, without making a tender or showing the ability to tender, Defendants were not entitled to rescission.

Defendants responded that the issue of whether Defendants could tender payment should be determined at trial and that there was nothing in the record that established their inability to pay. Defendants distinguished their statements regarding their income from statements regarding their ability to pay back the loan.

In granting the Second Motion for Summary Judgment, the Circuit Court stated:

All right, Counsel, let me state, first of all, that summary judgment should be granted when the pleadings, deposition, affidavits and exhibits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Let me state for the record that the Court is very familiar and fully understands your respective positions, and the Court is in agreement with the argument made by Mr. Brown, both in court and in the pleadings, that the recision [sic] which the Plaintiffs' have—excuse me, the recision [sic] that the Defendants have claimed cannot be effectuated because it appears that the Defendants lack the capacity to pay back the Plaintiff's loan. *And based on the declarations of the Defendants themselves*, and, in particular, as pointed out in the motion and memorandum in support of the motion for summary judgment, and as alluded to by Mr. Brown on the record this afternoon, *it appears undisputed that the Defendants defaulted on the loan and that they cannot repay the proceeds.*

The Court finds that there are no genuine issues of material fact, given the Court's findings, and, as such, the Court is awarding summary judgment to the Plaintiff for all of the relief prayed for in the motion and memo in support of, including the request for the writ of ejectment.

(Emphasis added.) Thus, the Circuit Court's decision was based solely on its determination that it "appears undisputed that the Defendants defaulted on the loan and that they cannot repay the proceeds."

On December 21, 2010, the Circuit Court entered its order granting the Second Motion for Summary Judgment and Judgment. On January 4, 2011, the Circuit Court issued a Writ of Ejectment.

On January 5, 2011, Karpeles filed a motion for attorneys' fees. Karpeles argued that it was entitled to an award of attorneys' fees and costs, pursuant to HRS § 607–14, because its action was in the nature of assumpsit. Karpeles claimed that the promissory note and mortgage allowed for taxation of attorneys' fees and costs. Karpeles also claimed that under *Hong v. Kong*, 5 Haw. App. 174, 182, 683 P.2d 833 (1984), actions for rescission were in the nature of assumpsit and that Defendants claimed the mortgage was subject to rescission.

On January 25, 2011, Defendants filed a Memorandum in Opposition to Karpeles's motion for attorneys' fees. Defendants noted that the Complaint was for possession of real property and that Defendants were trespassers, not for monetary damages or breach of the mortgage or promissory note. Defendants argued that the transaction was not transformed into one involving the mortgage or promissory note merely because Karpeles was the seller and successful bidder at a nonjudicial foreclosure. Defendants distinguished *Hong* on the basis that, unlike the plaintiff in *Hong*, Defendants did not assert a counterclaim for rescission—merely a defense—and Defendants did not ask for damages. Lastly, Defendants noted that Karpeles did not ask for, nor was awarded any damages, therefore, it was not possible to limit attorneys' fees to 25 per cent of the judgment, as required by HRS § 607–14.

On February 15, 2011, the Circuit Court granted Karpeles's motion and awarded at-

torneys' fees, tax, and costs in the amount of $52,657.43.

Defendants timely filed this appeal.

## II.  DISCUSSION

### The Circuit Court Erred By Granting The Second Motion For Summary Judgment

Karpeles did not and does not contest Defendants' ability to challenge their title to the Property based on the TILA, common law fraud, or HRS Chapter 480.  The Circuit Court granted Karpeles's Second Motion for Summary Judgment on the basis that "it appears undisputed that the Defendants defaulted on the loan and that they cannot repay the proceeds" and that "there are no genuine issues of material fact, given the Court's findings."  On appeal, Defendants argue that Karpeles ignored their rescission notice, which, they argue, made the loan void, and improperly refused to release its security interest in the Property.  Defendants contend that the Circuit Court should have strictly adhered to the provisions of 15 U.S.C. § 1635(b).  Defendants also claim that they "tendered payment in compliance with TILA," but that the specific payoff amount was not made known to them by Karpeles and the Circuit Court ruled in Karpeles's favor without any conclusive proof of Defendants' inability to "comply with their subsequent tender obligations."

We review the granting of a motion for summary judgment de novo.  *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000).  The standard is well-settled:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Gossinger v. Ass'n of Apt. Owners of Regency of Ala Wai*, 73 Haw. 412, 417, 835 P.2d 627, 630 (1992) (quoting Hawai'i Rules of Civil Procedure Rule 56(c) (1990)).  "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982).  "The evidence must be viewed in the light most favorable to the non-moving party."  *Bronster v. Yoshina*, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997).

Taking the evidence in the record in the light most favorable to Defendants, we are not convinced there was no genuine issue of material fact regarding their ability to pay.

It appears that the Circuit Court relied exclusively on the declaration of Duarte, which cited to the income received by Defendants as the evidentiary basis for its conclusion that it was "undisputed" that Defendants could not pay back the loan.  However, as Defendants' counsel pointed out, "My clients make statements in their declarations regarding their income.  They make no statements regarding their ability under any eventual circumstances to pay back the loan."  More importantly, in their pleadings, Defendants attached a copy of the Loan Application which indicated that the Property was valued at $620,000, far in excess of the loan amount of $375,000, and that they were receiving rental income of $900 per month.  Thus, there was evidence in the record that there were possible assets apart from their income.[5]

Conversely, there was no determination of the amount Defendants would have to pay, if rescission were granted under TILA. TILA provides that, once the debtor exercises his or her right to rescission, the debtor is "not liable for any finance or other charge," and the creditor must return to the debtor, "any money or property given as earnest money, downpayment or otherwise."  15 USC § 1635(b).  We note that the Loan Application indicates Defendants were to make a $40,000 cash payment at closing, and that Karpeles admitted Defendants made some payments toward the loan.  Without knowing

---

5.  It is true that Defendants maintained the Loan Application was "false."  However, their dispute with the document was as to the amounts entered for their earned income and did not dispute the other information it contained.

what amount the Defendants would be called upon to pay, it cannot conclusively be said that Defendants could not pay that amount.

Thus, we conclude that it was error to find that there was no genuine issue of material fact regarding Defendants' ability to repay the loan.

Finally, as this case must be remanded, we turn to Defendants' argument that the Circuit Court should have determined whether they had a valid right to rescind before determining their ability to repay. While not deciding this question, we note that the current Federal Reserve Board staff commentary provides, "Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property." Supplement I to Part 226—Official Staff Interpretations, 12 Code of Federal Regulations Pt. 226, Supp. I (2003); 69 Federal Register 16769, 16773 (March 31, 2004). For a contrary example, see *Yamamoto v. New York Bank*, 329 F.3d 1167 (9th Cir.2003) (the district court granted summary judgment to the creditor before determining whether debtors had a valid right to rescind after the debtors were given 60 days to demonstrate their ability to repay the loan). We would also note that if such a procedure would be followed on remand, Karpeles must first provide a balance due amount before requiring Defendants to provide proof of their ability to pay.

Based on the state of this record, we conclude that the Circuit Court erred in granting summary judgment to Karpeles.

Finally, as we vacate summary judgment in favor of Karpeles, we also vacate the attorneys' fees awarded to them.

### III. CONCLUSION

The Circuit Court of the Fifth Circuit's Order Granting Plaintiff's Motion for Summary Judgment and Judgment entered on December 21, 2010 and the Writ of Ejectment entered on January 4, 2011 are vacated, the Order Granting Plaintiff's Motion for Statutory Attorneys Fees and Costs entered

on February 15, 2011 is also vacated, and the case is remanded for further proceedings consistent with this opinion.